Trooper Alvin T. PONTARELLI, et al.,
Plaintiffs, Appellants,

v.

Walter E. STONE, et al.,
Defendants, Appellees.

Trooper Alvin T. PONTARELLI, et al.,
Plaintiffs, Appellees,

v.

Walter E. STONE, et al.,
Defendants, Appellants.

Trooper Alvin T. PONTARELLI, et al.,
Plaintiff, Appellee,

v.

Walter E. STONE, Defendant, Appellee,

State of Rhode Island,
Defendant, Appellant.

Nos. 89–1299, 89–1574, 89–1300
and 89–1301.

United States Court of Appeals,
First Circuit.

Heard April 6, 1991.

Decided April 18, 1991.

Elizabeth A. Rodgers with whom Kehoe, Doyle, Playter & Novick, Boston, Mass., was on briefs, for plaintiff Mary M. Nunes.

Max Wistow with whom Michael H. Feldhuhn, Wistow & Barylick Inc. and Thomas J. McAndrew, Providence, R.I., were on briefs, for defendants Walter E. Stone and Lionel Benjamin.

Joseph V. Cavanagh, Jr., with whom Michael DiBiase and Blish & Cavanagh, Providence, R.I., were on brief, for defendant-appellee Walter T. Reynolds.

Robin E. Feder, Asst. Atty. Gen., with whom James E. O'Neil, Atty. Gen., Providence, R.I., was on brief, for State of R.I.

Before BREYER, Chief Judge, TORRUELLA and CYR, Circuit Judges.

CYR, Circuit Judge.

These consolidated appeals mark the finish of a marathon civil action commenced by Rhode Island State Police Lodge 25 ("Union") and five members of the Rhode Island State Police ("State Police") against the State of Rhode Island ("State"), its Attorney General, and various State Police officials, charging sex discrimination and retaliation against women in attendance at the 1985–86 State Police Academy ("Police Academy") and while on active duty with the State Police. The only plaintiff to stay the course throughout the hotly contested district court proceedings was Trooper Mary M. Nunes, who obtained judgment against defendants State, Stone and Benjamin on but one of her several claims—a section 1983 sex discrimination and retaliation claim. Notices of appeal were filed by trial counsel to all plaintiffs, and by defendants State, Stone and Benjamin.

# I

## BACKGROUND

*Trial Court Proceedings*

On June 16, 1986, the Union and five of its members, Troopers Pontarelli, Nunes and Lepre, Corporal Ells and Detective Linda Bailey, filed àn eight-count complaint against State and four State officials in their individual and official capacities: Arlene Violet, State Attorney General; Walter E. Stone, State Police Superintendent; Lionel Benjamin, State Police Executive Officer; and Walter T. Reynolds, State Police Lieutenant. Plaintiffs asserted sex discrimination and retaliation claims, under 42 U.S.C. § 1983 and title VII, 42 U.S.C. § 2000e *et seq.*, as well as pendent state claims, and demanded legal and equitable relief. The claims of all plaintiffs, except Nunes, eventually were dismissed, with prejudice, and by the time the dust settled in the district court, all defendants had prevailed against all plaintiffs, except for the judgments Nunes obtained against State ($2.00), Stone ($10,002) and Benjamin ($5,002) on her section 1983 sex discrimination and retaliation claims.[1]

*Appellate Proceedings*

These appellate proceedings were initiated on three notices of appeal. The notice of appeal in No. 89–1299 stated that "[p]laintiffs in the above-entitled action" were appealing from "final judgments entered in favor of [d]efendants Violet, State, Reynolds, Stone, and Benjamin."[2] In No. 89–1300, defendants Stone and Benjamin appealed from the judgments entered on the Nunes section 1983 claims. In No. 89–1301, State appealed from the judgment entered on the Nunes section 1983 claim.

We noted apparent lack of appellate jurisdiction in No. 89–1299 due to the omission of the names of the appealing parties from the notice of appeal. *See* Fed.R.App.P. 3(c). The district court denied the ensuing motion for an extension of time to file a new notice of appeal specifying the names

1. The Nunes claims were severed from the claims of the remaining plaintiffs, and trial of the Nunes claims was bifurcated. The district court granted Attorney General Violet's motion for judgment on the pleadings, but deferred entry of judgment until after trial of the Nunes claims. Defendants State, Stone, Reynolds and Benjamin were found liable to Nunes for sex discrimination and retaliation under section 1983; defendants State, Stone and Benjamin were found liable to Nunes on a pendent state claim for invasion of privacy. The jury awarded Nunes nominal damages against Reynolds, Stone, Benjamin and State; $75,000 in punitive damages against Stone; and $50,000 in punitive damages against Benjamin. The district court denied Nunes declaratory and injunctive relief under title VII. Notwithstanding the verdicts, the district court entered judgments for defendant Reynolds on the Nunes section 1983 sex discrimination claim, and for defendants State,

Stone and Benjamin on the Nunes pendent state claim for invasion of privacy. The district court denied a motion for a new trial on the Nunes sex discrimination and retaliation claims against State, Stone and Benjamin, subject to a remittitur of all damages against Stone and Benjamin in excess of $10,000 and $5,000, respectively. Nunes accepted the remittitur.

2. Plaintiffs filed two notices of appeal in No. 89–1299. The first failed to designate the judgments appealed from, and the "amended notice of appeal" attempted to cure that defect. The captions to both notices of appeal in No. 89–1299 read: "Trooper Alvin T. Pontarelli, *et al.,* v. Walter E. Stone, *et al.*" The appealing "plaintiffs" were not otherwise specified. *See* Fed.R. App.P. 3(c). We treat the amendment as the operative notice of appeal.

of the appellants. *See* Fed.R.App.P. 4(a)(5) ("FRAP 4(a)(5)"). Plaintiffs' counsel filed a separate notice of appeal, designated No. 89–1574, from the district court order denying the FRAP 4(a)(5) motion, naming as appellants: Pontarelli, Nunes, Ells, Rhode Island State Police Lodge 25, Pendergast and Lepre; that is, the notice of appeal in No. 89–1574 named all original plaintiffs, except Linda Bailey, and added Pendergast. We subsequently granted the motions of Pendergast, Lepre and Pontarelli to dismiss their appeals in Nos. 89–1299 and 89–1574, with prejudice.[3]

II

DISCUSSION

*Appellate Jurisdiction*

Federal Rule of Appellate Procedure 3(c) states:

> (c) **Content of the Notice of Appeal.** The notice of appeal *shall specify the party or parties taking the appeal;* shall designate the judgment, order or part thereof appealed from; and shall name the court to which the appeal is taken. Form 1 in the Appendix of Forms is a suggested form of a notice of appeal.[4] An appeal shall not be dismissed for informality of form or title of the notice of appeal.

Fed.R.App.P. 3(c) (emphasis and footnote added).

■ The Supreme Court has determined that compliance with the FRAP 3(c) requirement that a notice of appeal "specify

the party or parties taking the appeal" is indispensable to appellate jurisdiction. *Torres v. Oakland Scavenger Co.,* 487 U.S. 312, 314–15, 108 S.Ct. 2405, 2407–08, 101 L.Ed.2d 285 (1988). *Oakland Scavenger* held that the designation "*et al.*" (*i.e.,* "and others") "utterly fails" to satisfy the requirement that a notice of appeal "specify" the party or parties taking the appeal. *Id.* at 318, 108 S.Ct. at 2409. The notice of appeal in No. 89–1299, captioned "Trooper Alvin T. Pontarelli, *et al.,* v. Walter E. Stone, *et al.,*" read as follows:

> **NOTICE** is hereby given that Plaintiffs in the above-entitled action hereby appeal to the United States Court of Appeals for the First Circuit from the final judgments entered in favor of Defendants Violet, State, Reynolds, Stone, and Benjamin.

A remarkably similar notice of appeal was before us in *Gonzalez–Vega v. Hernandez–Colon,* 866 F.2d 519 (1st Cir.1989) (*per curiam* ).[5] We concluded that the notices of appeal in *Gonzalez–Vega* and *Oakland Scavenger* were essentially indistinguishable, and we therefore held that only Gonzalez–Vega, whose name was specified in the notice of appeal, had succeeded in establishing appellate jurisdiction. *Id.* at 520. Similarly, the notice of appeal *sub judice* in No. 89–1299 is fatally defective under *Oakland Scavenger* and *Gonzalez–Vega,*[6] as its designation of the appealing parties differs in no material respect from the designation in *Gonzalez–Vega.* Accordingly, the notice of appeal in No. 89–1299 did not establish appellate jurisdiction

---

**3.** Although the records in Nos. 89–1299 and 89–1574 contain no motion to dismiss in behalf of plaintiffs Ells or Union, any appeals by those parties are deemed withdrawn, as no action was taken in their behalf following the filing of the notices of appeal. *See* Fed.R.App.P. 3(a).

**4.** **Form 1.**

**NOTICE OF APPEAL TO A COURT OF APPEALS FROM A JUDGMENT OR ORDER OF A DISTRICT COURT**

United States District Court for the ___ District of ___

File Number ___

A.B., Plaintiff

Notice of Appeal

C.D., Defendant

Notice is hereby given that C.D., defendant above named, hereby appeals to the United States Court of Appeals for the ___ Circuit (from the final judgment) (from the order (describing it)) entered in this action on the ___ day of ___.

___, 19___

(S) ___

FRAP Official Form 1.

**5.** The caption in the *Gonzalez–Vega* notice of appeal read: "ALFREDO GONZALEZ VEGA, et al. Plaintiffs;" its text read: "COME NOW plaintiffs Alfredo Gonzalez, et al....." *Gonzalez–Vega,* 866 F.2d at 519.

**6.** At oral argument, Nunes ultimately seemed to concede as much.

on the part of any would-be plaintiff-appellant other than Pontarelli.[7] *See also Rosario–Torres v. Hernandez–Colon,* 889 F.2d 314, 317 (1st Cir.1989) ("plaintiffs" appeal); *Santos–Martinez v. Soto–Santiago,* 863 F.2d 174, 176 (1st Cir.1988) ("all plaintiffs" appeal).[8]

*Appeal of Denial of FRAP 4(a)(5) Motion*

Within thirty days after the expiration of the thirty-day period prescribed in Fed.R. App.P. 4(a)(1) for lodging an appeal as a matter of right, plaintiffs' trial counsel presented the district court with a motion for an extension of time to file an amended notice of appeal in No. 89–1299. *See* Fed. R.App.P. 4(a)(5). The district court denied the motion on the grounds that the defect in the notice of appeal was not due to "excusable neglect," and that there was no "good cause" for an extension of time. *Pontarelli v. Stone,* 713 F.Supp. 525, 529–533 (D.R.I.1989).

We review the district court's interpretation of FRAP 4(a)(5) *de novo, see Ramseur v. Beyer,* 921 F.2d 504, 506 n. 2 (3d Cir. 1990), but otherwise defer to its denial of the requested extension in the absence of an abuse of discretion, *id.; Allied Steel v. City of Abilene,* 909 F.2d 139, 142 (5th Cir.1990); *Pasquale v. Finch,* 418 F.2d 627, 630 (1st Cir.1969) ("we accord 'great deference' to the district court's ruling on 'excusable neglect'" under FRAP 4(a)) (citation omitted); *cf. United States v. Twomey,* 845 F.2d 1132, 1134 (1st Cir.1988) (finding of "excusable neglect" under FRAP 4(b) reviewed for abuse of discretion).

Federal Rule of Appellate Procedure 4(a)(5) provides:

The district court, upon a showing of *excusable neglect or good cause,* may extend the time for filing a notice of appeal upon motion filed not later than 30 days after the expiration of the time prescribed by this Rule 4(a) [*i.e.,* not la-

ter than 30 days after date of entry of the judgment or order appealed from].

Fed.R.App.P. 4(a)(5) (emphasis added). FRAP 4(a) originally empowered the district court to extend the time to file a notice of appeal only upon a showing of "excusable neglect." An advisory committee note explains the 1979 amendment enabling the district court to grant an extension of time upon a showing of "excusable neglect *or good cause.*"

The proposed amended rule expands *to some extent* the standard for the grant of an extension of time. The present rule requires a "showing of excusable neglect." While this was an appropriate standard in cases in which the motion is made after the time for filing the notice of appeal has run, *and remains so,* it has never fit exactly the situation in which the appellant seeks an extension before the expiration of the initial time. In such a case "good cause," which is the standard that is applied in the granting of other extensions of time under [Federal] Rule [of Appellate Procedure] 26(b) seems to be more appropriate.

Fed.R.App.P. 4(a)(5) advisory committee note to 1979 amendment (emphasis added).

■ The advisory committee note has been relied upon by the seven regional courts of appeals which adhere to the view that the "good cause" standard is applicable exclusively to FRAP 4(a)(5) motions made during the thirty-day period for taking an appeal as a matter of right under FRAP 4(a)(1). *See 650 Park Ave. Corp. v. McRae,* 836 F.2d 764, 766 (2d Cir.1988); *Allied Steel v. City of Abilene,* 909 F.2d 139, 143 n. 3 (5th Cir.1990); *Marsh v. Richardson,* 873 F.2d 129, 130 (6th Cir.1989); *Parke–Chapley Constr. Co. v. Cherrington,* 865 F.2d 907, 909–10 (7th Cir.1989); *Vogelsang v. Patterson Dental Co.,* 904 F.2d 427, 431 (8th Cir.1990); *Oregon v. Champion Int'l Corp.,* 680 F.2d 1300, 1301

---

**7.** As stated, *supra* p. 5, Pontarelli's appeals in Nos. 89–1299 and 89–1574 were later dismissed, with prejudice.

**8.** Plaintiffs point out that *Gonzalez–Vega, supra,* was decided only four days prior to the filing of the notice of appeal in No. 89–1299. Nevertheless, the FRAP 3(c) requirement over which the

present notice of appeal trips did not originate with *Gonzalez–Vega,* but more than seven months earlier in *Oakland Scavenger, supra.* The FRAP 3(c) requirement is in any event jurisdictional. *Oakland Scavenger,* 487 U.S. at 314–15, 108 S.Ct. at 2407–08.

(9th Cir.1982) (*per curiam*); *Borio v. Coastal Marine Constr. Co.*, 881 F.2d 1053, 1055 (11th Cir.1989).

We have not set so absolute a limit on the scope of the "good cause" standard under amended FRAP 4(a)(5), *see Scarpa v. Murphy*, 782 F.2d 300, 301 (1st Cir.1986) (FRAP 4(a)(5) "expressly recognizes 'good cause' as a basis for extension both before and after the expiration of the appeal time"); one reason is that the language of amended FRAP 4(a)(5) itself, which hardly could be clearer, in no way intimates that "good cause" is to be utilized exclusively in the evaluation of FRAP 4(a)(5) requests submitted within the thirty-day period for lodging an appeal as a matter of right. *See id.* *Scarpa* required a "good cause" analysis in circumstances where there was no "neglect," excusable or otherwise, on the part of the would-be appellant, and the need for the FRAP 4(a)(5) extension resulted entirely from forces beyond the control of the would-be appellant.[9] *Id.* Until now, however, we have never been called upon to decide whether a "good cause" analysis is appropriate as well where the FRAP 4(a)(5) extension was occasioned only by "neglect" on the part of the would-be appellant.

We explore the plain language of the amended rule for further delineation of the appropriate scope of any "good cause" analysis in the circumstances of the present case. The search is assisted by the interpretive precept that the language of the amended rule should be ascribed no meaning which would render any part of it superfluous. *See Wadsworth v. Whaland*, 562 F.2d 70, 78 (1st Cir.1977) (when interpreting statute, court has duty to "construe it in such a manner as to give effect to all its parts and to avoid a construction which would render a provision surplusage") (citing *McDonald v. Thompson*, 305

U.S. 263, 59 S.Ct. 176, 83 L.Ed. 164 (1938)), *cert. denied*, 435 U.S. 980, 98 S.Ct. 1630, 56 L.Ed.2d 72 (1978); *e.g.*, *United States v. Noone*, 913 F.2d 20, 25 n. 5 (1st Cir.1990); *Lane v. First Nat. Bank of Boston*, 871 F.2d 166, 171 (1st Cir.1989). The plain language of the amended rule "expressly recognizes 'good cause' as a basis for extension both before and after the expiration of the appeal time." *Scarpa*, 782 F.2d at 301. No less significantly, the original "excusable neglect" standard, whose customary scope remains unlimited under the language of the amended rule, would be pared by gratuitous interpretation if the amendatory "good cause" analysis were not confined to circumstances unsuited to traditional "excusable neglect" analysis.

The advisory committee note, no less than our decision in *Scarpa*, buttresses our reluctance to interpret "excusable neglect" and "good cause" as overlapping standards under amended rule 4(a)(5). The 1979 amendment introduced "good cause" as a complementary standard, rather than as a replacement for the traditional "excusable neglect" analysis required under rule 4(a). *See* Fed.R.App.P. 4(a)(5) advisory committee note to 1979 amendment (excusable neglect "was an appropriate standard in cases in which the motion is made after the time for filing the notice of appeal has run, and *remains so*") (emphasis added); *see also Scarpa*, 782 F.2d at 301 ("good cause" analysis applied where excusable neglect analysis inapposite, as there was no mistake, excusable or otherwise, on part of would-be appellant).

■■■ We conclude, therefore, that the "good cause" analysis imported under the 1979 amendment neither displaces nor overlaps the "excusable neglect" analysis customarily employed under the earlier rule. *Cf. Lorenzen v. Employees Ret. Plan of*

**9.** Judge Aldrich wrote:
The rule expressly recognizes 'good cause' as a basis for extension both before and after the expiration of the appeal time. There was no mistake by counsel, excusable or otherwise. Rather, there was inexcusable neglect by the Post Office to take more than five days (even though this included a weekend) to transmit an adequately addressed letter three miles,

and no basis for charging counsel for failing to think that more might be needed. The court should have given the motion a practical meaning, *cf. Foman v. Davis*, 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962), as including "good cause," and should have found such.
*Scarpa*, 782 F.2d at 301.

*Sperry & Hutchinson Co.,* 896 F.2d 228, 232 (7th Cir.1990) ("the standards of excusable neglect and of good cause will rarely if ever have to be compared, because they have different domains"). Where the need for an extension of time to file a notice of appeal results entirely from neglect attributable to the would-be appellant, as distinguished from forces beyond her control, amended rule 4(a)(5) requires a showing of "excusable neglect." Finally, Nunes offers no supporting authority, and we have found none, for interpreting amended rule 4(a)(5) as authorizing overlapping analyses under the "good cause" and "excusable neglect" standards.[10]

*"Excusable Neglect"*

■ Neglect is "excusable" within the meaning of FRAP 4(a)(5) only in "unique or extraordinary" circumstances. *Spound v. Mohasco Inds.,* 534 F.2d 404, 411 (1st Cir.), *cert. denied,* 429 U.S. 886, 97 S.Ct. 238, 50 L.Ed.2d 167 (1976); *In re O.P.M. Leasing Services, Inc.,* 769 F.2d 911, 917 (2d Cir. 1985) ("a loose interpretation of 'excusable neglect' would convert the 30–day period for appeal provided in FRAP 4(a) into a 60–day one—a result clearly not intended by the Rule's framers"). We recently decided that mistaken reliance on *"et al."* to satisfy the FRAP 3(c) jurisdictional requirement that the notice of appeal "specify the party or parties taking the appeal" is in itself neither a unique nor an extraordinary circumstance warranting an extension under FRAP 4(a)(5). *Rivera v. Puerto Rico Telephone Co.,* 921 F.2d 393, 395–96 (1st Cir.1990) (in eight-plaintiff lawsuit, appeal noticed in name of "Elias Rivera, et als.").

The notice of appeal in *Rivera* seems indistinguishable from the notice of appeal *sub judice;* hence, as in *Rivera,* we conclude that the would-be appellants' inadvertent noncompliance with the FRAP 3(c) requirement does not, without more, "constitute excusable neglect for purposes of Rule 4(a)(5)." *Id.* (citing *Airplane Pilots in the Service of Executive Airlines, Inc. v. Executive Airlines, Inc.,* 569 F.2d 1174, 1175 (1st Cir.1978) (*reversing* grant of extension where failure to file timely notice of appeal was due to secretarial error).

Under some circumstances, of course, a would-be appellant's noncompliance with rule 3(c) may be excusable under rule 4(a)(5). *In re San Juan Dupont Plaza Hotel Fire Litigation,* 888 F.2d 940 (1st Cir.1989), affirmed a FRAP 4(a)(5) extension to permit amendment of a notice of appeal that stated: "all plaintiffs, through the Plaintiffs' Steering Committee hearby [sic] appeal." *Id.* at 941. We concluded that the district court did not abuse its discretion by granting an extension based on the "reasonableness" of the original notice of appeal in the extraordinary circumstances there presented, involving more than 2,000 plaintiffs, all of whom were represented throughout the litigation by the Plaintiffs' Steering Committee. *Id.* at 942.[11]

*Dupont Plaza* is inapposite to the circumstances in the present case. The notice of appeal *sub judice* identifies no entity whose representative status was a matter of record such that an appeal in its representative capacity patently evinced an intention to appeal in behalf of all plaintiffs.

---

**10.** We need not determine whether successive analyses would be appropriate in certain instances, such as where a FRAP 4(a)(5) extension request is necessitated by neglect on the part of the movant *and* by forces beyond the movant's control. Nor need we address whether successive analyses would be redundant in the present circumstances. *Compare, e.g., Spound v. Mohasco Inds., Inc.,* 534 F.2d 404, 411 (1st Cir.) ("[e]xcusable neglect calls for 'circumstances that are unique or extraordinary' "), *cert. denied,* 429 U.S. 886, 97 S.Ct. 238, 50 L.Ed.2d 167 (1976), *with, e.g., United States v. Beacon Bay Enter., Inc.,* 840 F.2d 921, 923–24 (Temp.Emer. Ct.App.1988) (FRAP 26(b)'s "good cause" requires showing of "unique circumstances;"

counsel's "lack of knowledge" of relevant procedural rules does not constitute unique circumstances) (citing *Reed v. Kroger,* 478 F.2d 1268, 1270 (Temp.Emer.Ct.App.1973)).

**11.** The Plaintiffs' Steering Committee previously had noticed appeals on behalf of all plaintiffs, without incident. *Id.* at 941. Indeed, we observed that the notice of appeal in *Dupont* may not have been defective under rule 3(c) and *Oakland Scavenger,* since the Plaintiffs' Steering Committee, " 'by its very nature,' " represented all plaintiffs. *Id.* at 942 (quoting district court's ruling on FRAP 4(a)(5) motion).

Six plaintiffs were involved in the present case, compared with 2,000 in *Dupont Plaza*.[12] Furthermore, the apparent ambivalence and evident confusion concerning which plaintiffs-appellants were appealing in the present case effectively precluded reliable ascertainment as to which plaintiffs would be bound by a final judgment.[13] *See Oakland Scavenger,* 487 U.S. at 318, 108 S.Ct. at 2409 (purpose of FRAP 3(c)'s specificity requirement is to provide notice to appellees and the court as to the identity of all appellants, and enable determination as to who shall be "bound by an adverse judgment or held liable for costs or sanctions").

The denial of the FRAP 4(a)(5) motion did not constitute an abuse of discretion, as the need for an extension of the appeal period in No. 89–1299 was due solely to inexcusable neglect on the part of the would-be appellants in failing to comply with the FRAP 3(c) requirement that a notice of appeal "specify the party or parties taking the appeal." At least where the need for an extension of time to file a notice of appeal results entirely from neglect attributable to the would-be appellant, as distinguished from forces beyond her control, a showing of "excusable neglect" is essential to an extension of the appeal period under FRAP 4(a)(5). As the defect in the notice of appeal in No. 89–1299 was due only to plaintiffs-appellants' neglect, it is unnecessary to consider the Nunes challenge to the "good cause" analysis.

*Cross-appeals*

 State, Stone and Benjamin cross-appeal from adverse judgments on the Nunes section 1983 claims for hostile environment sex discrimination[14] and retaliation,[15] based on State Police internal investigations into three incidents in which Nunes was involved while in active service

---

12. There are material dissimilarities in the appellate posture of the two cases as well. We affirmed the grant of a FRAP 4(a)(5) extension in *Dupont Plaza,* whereas plaintiffs-appellants in the instant case must establish that the district court's denial of an extension constituted an abuse of discretion. *See, e.g., Lorenzen,* 896 F.2d at 232–233 (same facts may be sufficient to support grant *or* denial of FRAP 4(a)(5) motion due to district court's considerable discretion in deciding these motions).

13. Since all other plaintiffs voluntarily dismissed their claims prior to entry of the judgments appealed from, Nunes argues that it was clear when the notice of appeal in No. 89–1299 was filed that this was a "single plaintiff case, a single plaintiff verdict and a single plaintiff judgment," and that "only Mary Nunes could appeal." In other words, Nunes argues that "Plaintiffs appeal" clearly meant "Mary Nunes alone appeals."

The record reveals a far more confused picture. The FRAP 4(a)(5) motion asserted that the original notice of appeal was meant to "encompass *all* 'Plaintiffs in the above-entitled action' as parties to the appeal." (emphasis added). Plaintiffs' memorandum in support of the FRAP 4(a)(5) motion in the district court represented that all plaintiffs, other than Nunes, were contending that their "voluntary dismissal did not include their claims against defendant Violet," notwithstanding the allowance of Violet's motion for judgment on the pleadings, *and* that an appeal "of their claims against the remaining Defendants may [also] lie notwithstanding the stipulated dismissal of these claims." Furthermore, the notice of appeal filed in No. 89–1574, from the denial of the FRAP 4(a)(5) motion, named *all* original plaintiffs in the district court action, except Bailey, and added plaintiff Pendergast. We cannot agree with Nunes that it was "clear," in these circumstances, that she alone was appealing.

14. Hostile environment sex discrimination obtains "when one or more supervisors or co-workers create an atmosphere so infused with hostility toward members of one sex that they alter the conditions of employment...." *Lipsett v. University of Puerto Rico,* 864 F.2d 881, 897 (1st Cir.1988) (citation omitted). *See also Chamberlin v. 101 Realty, Inc.,* 915 F.2d 777, 782 (1st Cir.1990).

15. In order to establish her retaliation claim under § 1983, Nunes was required to show that she engaged in constitutionally-protected conduct which was a "motivating" or "substantial" factor in the defendants' decision to investigate her. *See Mt. Healthy City School Dist. Bd. of Ed. v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977) (retaliatory discharge); *Acosta–Sepulveda v. Hernandez–Purcell,* 889 F.2d 9, 12–13 (1st Cir.1989) (same).

In order to establish a prima facie claim for retaliation under title VII, on the other hand, a plaintiff must show that (1) she engaged in conduct protected under title VII, of which the defendant was aware, (2) she suffered an adverse employment action, and (3) a causal relationship existed between the protected conduct and the adverse employment action. *Petitti v. New Eng. Tel. Co.,* 909 F.2d 28, 33 (1st Cir.1990).

with the State Police following graduation from the Police Academy.[16]

A denial of judgment n.o.v. is subject to plenary review and must be sustained unless the evidence, together with all reasonable inferences favorable to the verdict, " 'could lead a reasonable person to only one conclusion,' ... that the moving party was entitled to judgment." *Hendricks & Assoc., Inc. v. Daewoo Corp.*, 923 F.2d 209, 214 (1st Cir.1991) (quoting *Conway v. Electro Switch Corp.*, 825 F.2d 593, 598 (1st Cir.1987)) (citations omitted). On the other hand, we review the denial of a motion for new trial under the "abuse of discretion" standard, with a view to whether "the verdict was so clearly against the weight of the evidence as to amount to a manifest miscarriage of justice." *Id.* at 217 (citations omitted).

*State*

State correctly asserts that it is not a "person" subject to suit under 42 U.S.C. § 1983 for the deprivation of a civil right under color of state law. *Will v. Michigan Department of State Police*, 491 U.S. 58, 72, 109 S.Ct. 2304, 2312, 105 L.Ed.2d 45 (1989). We therefore vacate the judgment and dismiss the section 1983 claim against State.[17]

*Cross-appeals by Stone and Benjamin*

Stone and Benjamin make several arguments on appeal: (1) hostile environment discrimination is not actionable under section 1983; (2) the evidence established that Nunes would have been subjected to identical treatment even in the absence of a discriminatory motive; and (3) the jury verdicts on liability and damages were inconsistent. Finally, Stone contends that there was insufficient evidence to support the critical finding that he was aware that Nunes engaged in the constitutionally-protected conduct which allegedly prompted him to retaliate against her.

*Sexual Harassment Under Section 1983*

Stone and Benjamin mistakenly assert that *Patterson v. McLean Credit Union*, 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989), overrules our earlier decision that sex-based discrimination, including sexual harassment, is actionable under 42 U.S.C. § 1983 as a violation of the equal protection clause. *See Lipsett v. University of Puerto Rico*, 864 F.2d 881, 895–96, 898, 901 (1st Cir.1988). *Accord Poe v. Haydon*, 853 F.2d 418, 429 (6th Cir.1988), *cert. denied*, 488 U.S. 1007, 109 S.Ct. 788, 102 L.Ed.2d 780 (1989); *King v. Bd. of Regents of Univ. of Wisc. Syst.*, 898 F.2d 533, 537 (7th Cir.1990). Stone and Benjamin misapprehend *Patterson*, which established only that an action for racial harassment on the job does not lie under 42 U.S.C. § 1981, since section 1981 "covers only conduct at the initial formation of the contract and conduct which impairs the right to enforce contract obligations through legal process." *Patterson*, 491 U.S. at 179, 109 S.Ct. at 2374. The *Patterson* Court expressed its reluctance to "twist the interpretation" of section 1981 to reach on-the-job racial harassment claims, as such claims are covered under title VII. *Id.* 109 S.Ct. at 2375. Our conclusion that on-the-job sexual harassment claims are within the purview of section

---

**16.** The circumstances surrounding these incidents are not in dispute. The first investigation concerned an encounter during which Nunes slapped a fellow trooper; the second, a party Nunes hosted at the home of her parents; and the third, an automobile accident which occurred when an unidentified car forced her car off the road. Nunes alleged that these investigations constituted harassment, and that they were conducted in retaliation for her complaints of sex discrimination at the Police Academy.

**17.** *Will* held that state officials may not be sued in their official capacities under § 1983, as a suit against an official in "her official capacity is not a suit against the official but rather is a suit against the official's office." *Will*, 491 U.S. at 71, 109 S.Ct. at 2311. *Will* did not resolve whether § 1983 creates a cause of action against state officials in their individual capacities. We have held that such a cause of action may be brought under § 1983. *Gutierrez–Rodriguez v. Cartagena*, 882 F.2d 553, 567 n. 10 (1st Cir. 1989). *Accord Melo v. Hafer*, 912 F.2d 628, 635 (3d Cir.1990), *cert. granted*, —— U.S. ——, 111 S.Ct. 1070, 112 L.Ed.2d 1176. Accordingly, these § 1983 claims against state officials in their individual capacities are actionable.

1983 does not turn on any distorted interpretation of the statute. Section 1983 expressly embraces actions to redress "deprivation[s, under color of state law,] of ... rights, privileges, or immunities secured by the Constitution," 42 U.S.C. § 1983; this necessarily includes a deprivation of the right to equal protection of the law. *See Risinger v. Ohio Bur. of Workers' Comp.*, 883 F.2d 475, 479 (6th Cir.1989) (recognizing cause of action under § 1983 for sexual harassment, notwithstanding *Patterson* ).

■ Stone and Benjamin demand judgment n.o.v., or a new trial, on the ground that the evidence established that internal investigations would have been undertaken without regard to the sex of the officer involved in the three incidents. A majority of the Justices in *Price Waterhouse v. Hopkins*, 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989), decided that once a prima facie case of "mixed motive" employment discrimination is established,[18] the burden of persuasion shifts to the employer to prove that the employee would have been treated in the same way even in the absence of an impermissible discriminatory motive, *id.* at 243–45, 109 S.Ct. at 1787–88 (plurality); *id.* at 258, 109 S.Ct. at 1795 (White, J., concurring); *id.* at 266, 109 S.Ct. at 1799 (O'Connor, J., concurring); *see also id.* at 279, 109 S.Ct. at 1806 (Kennedy, J., Rehnquist, C.J., and Scalia, J., dissenting); *Jackson v. Harvard University*, 900 F.2d 464, 467 (1st Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 137, 112 L.Ed.2d 104 (1990).

■ Stone and Benjamin invite our attention to evidence which indeed does comport with their contention that these internal investigations were motivated, at least in part, by permissible considerations.[19] As the district court observed, these three incidents "raised questions of legitimate concern to the State Police." On the other hand, the evidence presented by Stone and Benjamin was by no means strong enough to compel the conclusion that these investigations would have been conducted regardless of Nunes' sex, or to render the contrary conclusion a manifest miscarriage of justice.[20]

*Verdict Inconsistency*

■ Stone and Benjamin demand a new trial on the ground that the verdicts on damages are inconsistent with the liability verdicts. Specifically, their contention is that the work environment could not have been sufficiently hostile to warrant a liability verdict for Nunes, since the jury awarded her no compensatory damages for hostile environment sex discrimination. As no objection was made by defendants before the jury was excused, however, their verdict inconsistency claim is deemed waived, *see Merchant v. Ruhle*, 740 F.2d 86, 91–92 (1st Cir.1984) (to "countenance a setting aside of the verdicts in this case would place a premium on agreeable acquiescence to perceivable error as a weapon of appellate advocacy") (inconsistent verdicts);[21]

---

**18.** "Mixed motive" discrimination involves actions resulting from "a mixture of legitimate and illegitimate motives." *Id.* at 232, 109 S.Ct. at 1781.

**19.** For example, Stone and Benjamin assert reliance on evidence that no other trooper had ever been involved in a "face-slapping" incident. Defendants argue further that the evidence did not establish that the investigation was not directed as well at the male trooper whom Nunes slapped. Stone and Benjamin also contend that the placement of the Nunes party announcement on an official bulletin board gave defendants the "right" to investigate the party and that, early in the investigation, Nunes lied about the number of troopers attending the party. Finally, Stone and Benjamin point to Trooper Lepre's testimony that similar automobile accidents, resulting in property damage only, involving male troopers, were investigated.

**20.** Trooper Lepre's testimony—that similar accidents, involving male troopers, were investigated—gives us some pause. But Lepre later clarified his testimony, stating that, apart from the Nunes accident, he was not aware of any other *internal investigation* of an automobile accident involving property damage only. Thus, at least to this extent, Lepre's testimony provides circumstantial support for the verdicts against Stone and Benjamin.

**21.** Cross-appellants should have been particularly alert for a possible verdict inconsistency, since the court conducted separate trials on liability and damages. Thus, their failure to assert timely objections seems especially unjustified. *See Austin v. Lincoln Equip. Assoc., Inc.*, 888 F.2d 934, 939 (1st Cir.1989) ("the circumstances portend[ed] possible verdict inconsistency").

*see also Austin v. Lincoln Equip. Assoc., Inc.*, 888 F.2d 934, 939 (1st Cir.1989) (inconsistent responses to special interrogatories), and we express no view as to whether defendants have alleged an actual verdict inconsistency, fatal or otherwise. Most apparent verdict inconsistencies are readily curable while the jury remains empaneled. Once the jury is excused from further service in the case, however, the only means of reconciling a verdict inconsistency may be a new trial, with its unnecessary costs and delays to the parties, *see Skillin v. Kimball*, 643 F.2d 19, 19–20 (1st Cir.1981), and its unaffordable drain on judicial resources.

*Section 1983 Retaliation Claim Against Stone*

■ The section 1983 retaliation claim required a showing that Stone's alleged intention to retaliate against Nunes for exercising her right to speak out against discriminatory treatment of women at the Police Academy was a substantial factor motivating the initiation of the investigations. *See Duffy v. Sarault*, 892 F.2d 139, 143 (1st Cir.1989) (politically-motivated discharge from employment).

Stone challenges the sufficiency of Nunes' evidence on alternate fronts. We reject Stone's first contention, which argues, without citation to authority, that circumstantial evidence alone cannot establish that Stone knew, before he ordered the departmental investigations, that Nunes had spoken against discriminatory treatment of women at the Police Academy. We have recognized, in all sorts of similar settings, that circumstantial evidence alone may be sufficient to support a finding of "knowledge." *See, e.g., Ferrer v. Zayas*, 914 F.2d 309, 312 (1st Cir.1990) (§ 1983 political discharge case); *D & D Distribution Co. v. N.L.R.B.*, 801 F.2d 636, 640–41 (3d Cir.1986) (retaliation claim arising under § 8(a)(1) of the National Labor Relations Act); *United States v. Passos–Paternina*, 918 F.2d 979, 984–85 (1st Cir.1990) (Maritime Drug Law prosecution). So it is in the present action.

Stone's fallback position is that the circumstantial evidence was insufficient. Stone does not dispute that Benjamin, Stone's second in command, knew about Nunes' complaints concerning discriminatory treatment of women at the Police Academy. Instead, Stone argues that there was insufficient evidence that Benjamin passed this information on to Stone before Stone ordered the internal investigations. Stone testified that Benjamin customarily informed him of any problem at the Police Academy about which Benjamin believed Stone should be advised. Benjamin considered the allegations about discriminatory treatment of women at the Police Academy, if true, "very serious;" Benjamin discussed the allegations with Lt. Reynolds, the commanding officer at the Police Academy, and with Lt. Moffat, whose daughter was at the Academy; and Benjamin was "pretty sure" that he told Stone about the locker room search upon which Nunes' complaints about the Police Academy were in large part based.

We recognize, of course, that the evidence did not compel an inference that Benjamin directly informed Stone of Nunes' protected conduct before Stone ordered the internal investigations. On the other hand, the evidence neither required a contrary inference, nor, when considered with other circumstantial evidence, was it so weak as to raise a concern that the verdict against Stone represented a manifest miscarriage of justice.

For the foregoing reasons, *the judgment against the State of Rhode Island is vacated, and the section 1983 claim against it dismissed; the judgments against Stone and Benjamin are affirmed; the appeal in No. 89–1299 is dismissed for lack of jurisdiction, and the order appealed from in No. 89–1574 is affirmed.*

*It is so ordered.*