948 F.2d 1281
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
LCS SERVICES, INC., a corporation, Plaintiff-Appellant,
v.
J. Edward HAMRICK, III, Director, West Virginia Division of
Natural Resources, individually and in his official
capacity; George Max Robertson, Chief, Section of Waste
Management, Division of Natural Resources, individually and
in his official capacity, Defendants-Appellees.
 No. 91-1411.
 United States Court of Appeals, Fourth Circuit.
 Argued July 31, 1991.
Decided Dec. 6, 1991.
 
 Appeal from the United States District Court for the Southern District of West Virginia, at Charleston. Charles H. Haden II, Chief District Judge. (CA-90-1132-2)
 Argued: Anne E. Shaffer, Ditrapano & Jackson, Charleston, W.Va., for appellant; Susan K. Coghill, Assistant Attorney General, Environment & Energy Division, Charleston, W.Va., for appellees.
 On Brief: P. Rodney Jackson, Ditrapano & Jackson, Charleston, W.Va., for appellant; Mario J. Palumbo, Attorney General, Robert D. Pollitt, Deputy Attorney General, Environment & Energy Division, Charleston, W.Va., for appellees.
 S.D.W.Va.
 AFFIRMED.
 Before DONALD RUSSELL, WIDENER and K.K. HALL, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 LCS Services, Inc., appeals the district court's granting of appellees' motion to dismiss this suit seeking injunctive and monetary relief under 42 U.S.C. § 1983. The district court relied on three alternative grounds--(1) the states' Eleventh Amendment immunity; (2) state officials' immunity from official-capacity suits under § 1983; and (3) Burford abstention. We find that, even though defendants are not immune from all of the claims asserted, abstention was nonetheless appropriate. Accordingly, we affirm.
 
 I.
 
 2
 This dispute has engendered a proliferation of regulatory proceedings and lawsuits in state and federal courts. It reaches us for a third time. The underlying tussle involves appellant LCS' attempts to open a solid waste landfill in Berkeley County, West Virginia. Appellees are officials of the West Virginia Division of Natural Resources ("DNR"), which is charged by statute to administer the state's solid waste laws. In the first appeal, Geo-Tech Reclamation Industries, Inc. v. Hamrick, 886 F.2d 662 (4th Cir.1989), we declared unconstitutional a West Virginia statute that allowed the DNR to deny a landfill permit based solely on standardless "adverse public sentiment."
 
 
 3
 Our opinion in the second appeal summarizes the succeeding events, see LCS Services, Inc. v. Hamrick, 925 F.2d 745, 746-747 (4th Cir.1991). In short, the district court held on remand that the permit statutes and regulations as they existed in February, 1988, rather than as later amended while Geo-Tech was pending, should be applied to LCS' application. On September 27, 1989, the state Water Resources Board issued LCS a permit to construct and operate the landfill. No interested party, DNR included, appealed the granting of the permit.[1]
 
 
 4
 DNR filed three state court proceedings in May, 1990, concerning tonnage limits, LCS' failure to post a performance bond, and a county site approval certificate. See 925 F.2d at 747-748. At LCS' instance, the district court enjoined the state proceedings under the relitigation exception to the Anti-Injunction Act, 28 U.S.C. § 2283. DNR appealed, and this court reversed. We held that none of the state proceedings attempted to relitigate matters resolved in Geo-Tech; therefore, the Anti-Injunction Act barred enjoining the state proceedings.
 
 
 5
 While the second appeal was pending, LCS completed construction of the landfill. LCS alleges that it had completed every prerequisite to accepting solid waste, and that an agent of DNR confirmed that all items on the final check-off were satisfied. Nonetheless, on November 30, 1990, when trucks from the city of Martinsburg arrived at the landfill, six armed DNR conservation officers turned them away. The officers allegedly informed the truck drivers that LCS did not have a permit to operate the landfill; appellee Hamrick called the mayor of Martinsburg to demand that no further loads of trash be sent to the site.
 
 
 6
 DNR's orders setting conditions for compliance with West Virginia's solid waste laws are appealable to the state Water Resources Board and eventually to the state courts. DNR issued no appealable orders in conjunction with its refusal to allow LCS to operate on and after November 30, 1990.
 
 
 7
 The November 30 showdown was apparently expected, inasmuch as LCS filed this complaint that very day against Edward Hamrick, director of DNR, and George Robertson, Chief of the Waste Management section of DNR. The complaint contains five counts:
 
 
 8
 Count I prays for an injunction against appellees' interference with LCS' operation of its landfill and for the appointment of a federal receiver to administer the state's solid waste laws.
 
 
 9
 Count II is a § 1983 civil rights claim against appellees in their official and individual capacities; LCS seeks $1 million in compensatory damages.
 
 
 10
 Count III prays for attorney's fees.
 
 
 11
 Count IV is a pendent state claim for tortious interference with contracts.
 
 
 12
 Count V prays for $5 million in punitive damages.
 
 
 13
 LCS' § 1983 theories included violations of due process, the contracts clause, and equal protection. For example, as an equal protection deprivation, LCS asserts that the appellees turn a blind eye to county- and municipality-owned dumps, while insisting on superhuman compliance from LCS.
 
 
 14
 The appellees moved to dismiss. The district court granted the motion, and LCS appeals.
 
 II.
 
 15
 The district court concluded that it lacked jurisdiction or alternatively would abstain. We find that abstention provides a proper basis to affirm the dismissal of all counts.
 
 A.
 
 16
 The Eleventh Amendment precludes federal courts from hearing suits against states.[2] The only exception is a suit brought for prospective injunctive or declaratory relief against a state statute, regulation, or practice that violates the federal constitution. Kentucky v. Graham, 473 U.S. 159, 167 n. 14 (1985); Ex Parte Young, 209 U.S. 123 (1908). Therefore, to the extent this suit seeks injunctive relief against purportedly unconstitutional acts of state officials, it is not barred by the Eleventh Amendment.
 
 B.
 
 17
 States are not "persons" within the meaning of § 1983; therefore, they cannot be sued for money damages under that statute. State officers acting in their official capacities share the state's immunity. Will v. Michigan Dep't of State Police, 491 U.S. 58 (1989). Therefore, to the extent the complaint seeks damages from appellees in their official capacities, it is barred.
 
 
 18
 However, this suit is clearly brought against appellees in their official and individual capacities. The district court nonetheless made a "finding of fact" that appellees "at all relevant times were acting only in their official capacities." The district court is of course bound by the factual allegations of the complaint when ruling on a Rule 12(b)(6) motion to dismiss; it must construe the factual assertions of the complaint liberally in favor of the plaintiff and may not make "findings of fact" in favor of the defendant. Conley v. Gibson, 355 U.S. 41 (1957).
 
 
 19
 In the style of the case, in a paragraph identifying Hamrick, and in the body of the § 1983 claim, LCS states that it sues the appellees in their individual and official capacities. At paragraphs 3 and 4, LCS asserts, as it must for § 1983 relief, that appellees acted "under color or authority of" state law. The appellees interpret this allegation as an admission that they took no actions in their individual capacities. This interpretation stumbles over vital, though by no means quickly apparent, distinctions in the jurisprudence of § 1983. "Official capacity" means that the individual's office (and hence the governmental unit's treasury) is being attacked; "individual capacity" means that damages are only sought from the individual. "Color or authority of state law" is an element of the § 1983 claim in either case. LCS' assertion of appellees' "color or authority" is a requisite, not a defect, of its claim.
 
 
 20
 The complaint states a viable § 1983 claim to the extent it seeks damages against appellees in their individual capacities. Hafer v. Melo, 1991 WL 221067 (U.S., Nov. 5, 1991), aff'g, 912 F.2d 628 (3rd Cir.1990); Goodmon v. Rockefeller, --- F.2d ---- (4th Cir.1991); Pontarelli v. Stone, 930 F.2d 104, 113 n. 17 (1st Cir.1991).
 
 C.
 
 21
 The district court ruled that it would abstain from exercising any jurisdiction it may have under the doctrine of Burford v. Sun Oil Co., 319 U.S. 315 (1943). Among the various abstention doctrines, Burford is especially policy-laden. The Burford policy is that federal courts should act " 'with proper regard for the rightful independence of state governments in carrying out their domestic policy.' " 319 U.S. at 318, quoting Pennsylvania v. Williams, 294 U.S. 176, 185 (1935). Burford is most often applied to disputes arising within a complex and comprehensive local regulatory scheme. Instead of permitting free access to district courts, which could bring a local scheme to a halt, Burford teaches that the states should be able to conduct complex local affairs without the undue interference of federal courts, with appeal to the United States Supreme Court the single federal check on state abuses. 319 U.S. at 334.
 
 
 22
 On the other hand, Burford abstention is an exercise in restraint by the federal government, and not an unfettered license for the states to trample federal rights. Application of the doctrine requires thoughtful balancing of the competing federal and state interests--the clarity and importance of the federal rights the plaintiff seeks to vindicate, the local or national character of the subject matter, the complexity of the state regulatory scheme, the adequacy of state remedies, and others too case-specific to catalogue. In any event, this often-difficult ruling is committed to the sound discretion of the district court, and we will reverse it only if that discretion is abused. Brandenburg v. Seidel, 859 F.2d 1179, 1195 (4th Cir.1988).
 
 
 23
 Burford abstention has been approved in a similar case in this court. Browning-Ferris, Inc. v. Baltimore County, 774 F.2d 77 (4th Cir.1985). In that case, Browning-Ferris' permit to operate a landfill had expired, and the county denied a renewal. Browning-Ferris had a state regulatory procedure available to it, but chose instead to file a § 1983 suit. The district court abstained, and this court affirmed. Browning-Ferris is not a completely congruent precedent, because the act complained of was subject to direct state administrative review, where here LCS alleges a course of conduct that is ancillary to the substantive issues pending before the various state entities. Still, the degree of unnecessary entanglement with primarily local concerns is the issue, rather than wooden examination of whether a particular act or acts is or may be under state review. Significantly, BrowningFerris instructs that "land use questions, especially those that involve the regulation of trash dumps, are the peculiar concern of local and state governments, and traditionally, federal courts have not interfered...." 774 F.2d at 79. There are two aspects of LCS' claims where the district court had the power to grant relief: (1) to enjoin unconstitutional interference with LCS' operation of the landfill; and (2) to award § 1983 damages against appellees in their individual capacities. We think Burford abstention is appropriate in both instances.
 
 
 24
 There are four state court cases and a half-dozen administrative appeals currently pending between the parties. Two of the state cases are before the West Virginia Supreme Court of Appeals. The issues involved concern the validity of LCS' permit, whether LCS must obtain local site approval, whether an aggregate county tonnage limit applies to the landfill, and several technical issues. We cannot envision how a district court could craft an injunction that would not interfere with appellees' legitimate rights to litigate in state court, or even how it could decide to issue the injunction in the first place without resolving the merits of disputes pending in state court. Any lingering doubts that these proceedings are relitigations of Geo-Tech were laid to rest in the second appeal to this court. If a federal court should not enjoin the proceeding, it should not enjoin one of the parties from "interfering" with the other.
 
 
 25
 The § 1983 suit is a somewhat closer call. Nonetheless, we cannot see how this case could proceed while the state cases are pending without unduly interfering with appellees' actions in them or requiring the district court to resolve factual issues that ought to be decided in the state proceedings. The district court's finding that Burford abstention is appropriate is not an abuse of discretion.
 
 
 26
 The judgment of the district court is affirmed.[3]
 
 
 27
 AFFIRMED.
 
 
 
 [1]
 DNR has since filed an action in state court challenging the validity of this permit, however
 
 
 [2]
 The Amendment actually prohibits a federal court from hearing a suit "commenced or prosecuted against one of the United States by Citizens of another State...." Suits by a person against his own state are not even within the Article III jurisdiction the Eleventh Amendment was intended to counteract, i.e. Art. III § 2 provides that the judicial power extends to controversies "between a State and Citizens of another State." However, there is no difference in the way the Supreme Court has analyzed suits against states by its own or other states' citizens. See In re New York, 256 U.S. 490, 497 (1921) (Sovereign immunity is underlying doctrine; Eleventh Amendment merely an application); Pennhurst State School and Hospital v. Halderman, 465 U.S. 89, 98-99 (1984)
 
 
 [3]
 Both parties sought to supplement the appendix before oral argument. We took the motions under advisement; at argument, it became apparent that the additional material was irrelevant to the issues before us. Accordingly, all pending motions to file supplemental appendices are denied