USCA1 Opinion

 

 United States Court of Appeals For the First Circuit ____________________ Nos. 93-2010 93-2217 ANA VIRELLA-NIEVES, ET AL., Plaintiffs, Appellees, v. BRIGGS & STRATTON CORPORATION, ET AL., Defendants, Appellees. ____________________ AIRCAP INDUSTRIES, INC., AND CIGNA INSURANCE COMPANY, Defendants, Appellants. ____________________ No. 93-2229 ANA VIRELLA-NIEVES, ET AL., Plaintiffs, Appellants, v. AIRCAP CORPORATION, ET AL., Defendants, Appellees. ____________________ APPEALS FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO [Hon. Juan M. Perez-Gimenez, U.S. District Judge] ___________________ ____________________ Before Torruella, Chief Judge, ___________ Coffin, Senior Circuit Judge, ____________________ and Selya, Circuit Judge. _____________ ____________________ Steven C. Lausell with whom Manuel San Juan was on brief for _________________ _______________ plaintiffs. Francisco J. Colon-Pagan with whom Keith A. Vanderburg was _________________________ ____________________ on brief for defendants. ____________________ May 4, 1995 ____________________ COFFIN, Senior Circuit Judge. The district court, finding _____________________ that defendants had "good cause" for their failure to file a notice of appeal within the applicable thirty-day period, issued an order extending their time to file an appeal. Because "good cause" is not the proper basis for an extension of time under the circumstances present here, we must vacate the court's order. I. Background __________ After trial, the jury returned a verdict for plaintiffs on their product liability action. Both sides then filed timely post-trial motions, which were denied by the court on July 12, 1993. The clerk of court received and filed the court's orders denying the motions that same day and docketed them on July 13. It is uncontested that, on July 14, the clerk's office mailed copies of the orders to defendants and that defendants received them. These copies showed that the judge had signed the orders and the clerk's office had received and filed them on July 12. Defendants submit, however, that they did not indicate that they had been entered upon the court docket, which is the starting point for the running of the thirty-day period for filing a notice of appeal. See Fed. R. App. P. 4(a). ___ In other words, defendants knew that the court had denied the post-trial motions on July 12, that the clerk's office had received and filed the court's orders on that same day, and that all that remained for the clock to begin running on the period for taking an appeal was for the clerk's office to perform the ministerial task of entering a notation onto the docket -3- indicating that the post-trial motions had been denied. Yet, despite this knowledge, defendants did nothing until August 9, when the secretary of defendants' lead counsel returned from her vacation. It was only upon her return that defendants first made an attempt to find out if the orders had been entered on the docket. According to the secretary's unsworn statement, she called the clerk's office "on various occasions" to ascertain if the orders had been docketed. Though she provided no dates, she stated that "each time" she called, she was told by unnamed "clerk's office personnel" that the computer system was down.1 Faced with what should have been the alarming prospect that, if the clerk's office had docketed the orders on the day it received them, the time to appeal would expire August 12, defense counsel did nothing more than have his secretary continue her unsuccessful attempts. It was not until August 16 that she was told that the orders had been docketed. Still, defense counsel did not think to inquire when the orders had been docketed. ____ Instead, upon learning that the orders had been entered, he assumed that he would receive written notice from the clerk's office advising him of the date of their entry, and took no further steps to learn this crucial fact himself. It was only during a chance telephone conversation later on August 16 that plaintiffs' counsel mentioned to defense counsel  ____________________ 1 She stated that on one occasion she was told by "Nancy" of the clerk's office to try again the next day. -4- that the orders had been entered on July 13. The thirty-day period had expired. Sometime during the evening of August 18, defense counsel filed a motion pursuant to Fed. R. App. P. 4(a)(5) requesting an extension of time to file an appeal "on the grounds of excusable neglect or good cause." The court granted the motion by margin order, writing only: "For good cause shown the requested extension of time to file Notice of Appeal is Granted." Defendants then appealed. Plaintiffs thereafter filed their cross appeal. See Fed. R. App. P. 4(a)(3). ___ II. Discussion __________ Pursuant to Fed. R. Civ. P. 77(d), the clerk of court is charged with the responsibility of mailing notice of the entry of court orders and judgments to all non-defaulted parties. But the Rule itself plainly states that the clerk's failure to do so "does not affect the time to appeal or relieve or authorize the court to relieve a party for failure to appeal within the time allowed, except as permitted in Rule 4(a) of the Federal Rules of Appellate Procedure." Thus, since lack of receipt of notice of the entry of the dispositive orders is the basic reason advanced for defendants' delinquency, we turn to Fed. R. App. P. 4(a). Before Rule 4(a) was amended in 1991, only one subdivision, 4(a)(5), gave district judges the authority to grant extensions of time to file appeals. That section provides: "The district court, upon a showing of excusable neglect or good cause, may extend the time for filing a notice of appeal upon motion filed not later than 30 days after the expiration" of the original time -5- period allowed. Fed. R. App. P. 4(a)(5). Seven courts of appeals have read this rule to mean that the good cause standard is applicable only to requests for extensions made before the expiration of the original period for filing a timely appeal, while the excusable neglect standard applies if the request is made afterward. See Pontarelli v. Stone, 930 F.2d 104, 109-10 ___ __________ _____ (1st Cir. 1991) (collecting cases from the Second, Fifth, Sixth, Seventh, Eighth, Ninth and Eleventh Circuits).2 We have taken a different view. As we first noted almost a decade ago, Rule 4(a)(5) "expressly recognizes `good cause' as a basis for extension both before and after the expiration of the appeal time." Scarpa v. Murphy, 782 F.2d 300, 301 (1st Cir. ______ ______ 1986). Scarpa involved a request for an extension made after the ______ period had expired, but was occasioned by no "neglect" on the part of the would-be appellant. Rather, the notice of appeal was filed late because of delay by the United States Postal Service in delivering it to court. Thus we said that the extension should have been granted because there was good cause shown for its being filed late, rather than any neglect, excusable or otherwise, by the appellant. Id. ___  ____________________ 2 These courts have relied heavily upon the advisory committee note to the 1979 amendment to Rule 4(a)(5) in reaching this holding. Before 1979, a district court was empowered to extend the period for filing an appeal only upon a finding of excusable neglect. The advisory committee wrote that while excusable neglect "was an appropriate standard in cases in which the motion is made after the time for filing the notice of appeal has run, and remains so, it has never fit exactly the situation in which the appellant seeks an extension before the expiration of the initial time. In such a case `good cause' . . . seems more appropriate." -6- More recently, in Pontarelli v. Stone, 930 F.2d at 110, we __________ _____ reiterated that a showing of good cause could justify granting an extension even if requested after the initial time period had expired. But we also made clear that the two standards occupy distinct spheres. The good cause standard, which was added by the 1979 amendment, "neither displaces nor overlaps the `excusable neglect' analysis customarily employed under the earlier rule." Id. Rather, it adds a limited basis for granting ___ an extension in those circumstances that are "unsuited to traditional `excusable neglect' analysis." Id. Such ___ circumstances were found to be present in Scarpa because there ______ was no "neglect" by the would-be appellant at all, so that it made no sense to analyze whether the neglect was "excusable." Such is not the case here. Defendants were put on notice that the dispositive orders had been signed by the judge and received by the clerk's office on July 12. By their own choice, they waited almost the full thirty days, until August 9, before even attempting to learn when the orders had been docketed. When telephonic inquiries proved unavailing, they took no further steps, but simply allowed the time to expire. They presented no reason for their failure, for example, to send a messenger to court to look up the relevant date, and we see no "forces beyond [their] control," id. at 111 -- at least on this record -- that ___ prevented them from taking this eminently reasonable step. Thus, under Rule 4(a)(5), it is clear that only excusable neglect, rather than good cause, could justify granting an extension. See ___ -7- Gochis v. Allstate, 16 F.3d 12, 14 (1st Cir. 1994) (where failure ______ ________ to file timely appeal is due to party's own neglect, rather than forces beyond party's control, excusable neglect standard applies). The determination of whether a party's neglect is excusable "is at bottom an equitable one, taking into account all of the relevant circumstances surrounding the party's omission." Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. Partnership, ________________________ ___________________________________ 113 S. Ct. 1489, 1498 (1993) (giving non-exhaustive list of relevant factors).3 No such determination having been made, we must vacate the grant of additional time to file the appeal. Since plaintiffs' cross appeal was timely only because of the additional time granted to defendants, see Fed. R. App. P. ___ 4(a)(3), we have jurisdiction over neither party's appeal. Two observations remain. We already have noted that, before 1991, Rule 4(a)(5) was the sole basis for granting additional time to appeal. Defendants apparently failed to realize that Rule 4(a) was amended in 1991 to respond precisely to the situation in which they found themselves. The new subdivision provides: The district court, if it finds (a) that a party entitled to notice of the entry of a judgment or order did not receive such notice from the clerk or any party within 21 days of  ____________________ 3 We agree with the Tenth Circuit that Pioneer's exposition _______ of excusable neglect, though made in the context of late bankruptcy filings, applies equally to Fed. R. App. P. 4(a)(5). See City of Chanute, Kansas v. Williams Nat. Gas Co., 31 F.3d ___ ________________________ ______________________ 1041, 1046 (1994). We may add one further rationale to those given by the Tenth Circuit for this conclusion: the Pioneer Court _______ specifically cited conflict among the circuits in interpreting excusable neglect in Rule 4(a)(5) as a reason for granting certiorari. Pioneer, 113 S. Ct. at 1494 n.3. _______ -8- its entry and (b) that no party would be prejudiced, may, upon motion filed within 180 days of entry of the judgment or order or within 7 days of receipt of such notice, whichever is earlier, reopen the time for appeal. Fed. R. App. P. 4(a)(6). This section may supply an alternate basis for the district court to grant defendants additional time to appeal. Of course, it was not relied upon below, and the district judge had no occasion to make the requisite fact- findings. We offer no speculation on whether defendants may now rely upon this provision or, if so, how the district judge will find the relevant facts. Finally, at oral argument we urged the parties to explore settlement. They did so, to no avail. Now, in the light of this remand, it seems especially appropriate to renew the suggestion. Not only is there no guarantee at this juncture that the appeal (and the cross appeal) can go forward, but we are skeptical that any appellant would eventually succeed in reversing the judgments below. Accordingly, the order granting additional time to file this appeal is VACATED and the case is REMANDED for proceedings consistent with this opinion. Costs to plaintiffs. -9-