# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 01-3758

_____

Glen Gibbons, Rhonda Two Eagle,     *
Melanie Two Eagle, Robert Eagle Elk,  *
Crystal Eagle Elk, Everett Little White  *
Man,     *
    *
      Plaintiffs - Appellants,   *
    *  Appeal from the United States
    v.     *  District Court for the District
    *  of South Dakota.
United States of America, William   *
Michael Brewer, William Lone Hill, Sr.,  *     [PUBLISHED]
Stanley Star Comes Out, Paul Forney,  *
Howard Spoonhunter, Jackson Ten  *
Fingers, Marvin Afraid of Bear,  *
Eugenio White Hawk, Narcisse Rabbit,  *
Barney White Face, Bernardo  *
Rodriquez, Jr., Wendell Yellow Bull,  *
Steven Sandven, Individually and as  *
Officers, Employees or Agents of the  *
Oglala Sioux Tribe and Department  *
of Public Safety,   *
    *
      Defendants - Appellees.   *
    *

_____

Submitted: October 11, 2002
Filed: January 24, 2003

_____

Before LOKEN, BEAM, and MELLOY, Circuit Judges.

_____

MELLOY, Circuit Judge.

In this appeal, the plaintiffs-appellants contend that the district court erred in denying their motion for extension of time to file a notice of appeal pursuant to Federal Rule of Appellate Procedure 4(a)(5). Because the district court[1] acted within its discretion in denying the motion, we affirm.

In the underlying suit, the plaintiffs alleged violations of their civil rights by the United States and numerous tribal law enforcement officials who worked for the Oglala Sioux Tribe Department of Public Safety and the Oglala Sioux Tribe. On August 3, 2001, the district court granted the defendants' motion to dismiss and entered judgment in their favor. The plaintiffs failed to file a notice of appeal within sixty days as prescribed under Federal Rule of Appellate Procedure 4(a). See Fed. R. App. P. 4(a)(1)(B). On October 19, 2001, the plaintiffs moved for extension of time to file a notice of appeal pursuant to subsection 5 of Rule 4(a). The district court denied the motion.

Rule 4(a)(5) permits the district court to grant a motion for extension of time to file a notice of appeal if the moving party can show "excusable neglect or good cause."[2] See Fed. R. App. P. 4(a)(5)(A)(ii). The district court found that the plaintiffs failed to establish the excusable neglect or good cause necessary for a

_____

[1] The Honorable Richard H. Battey, United States District Judge for the District of South Dakota.

[2] The moving party must also file for the extension within thirty days after the Rule 4(a) deadline. See Fed. R. App. P. 4(a)(5)(A)(i). The plaintiffs satisfied this condition by filing the motion for extension on October 19, 2001, sixteen days after the original October 3 deadline.

discretionary grant of their motion.[3] We review the district court's decision for abuse of discretion.  See Metro. Fed. Bank of Iowa, F.S.B. v. W.R. Grace & Co., 999 F.2d 1257, 1259 (8th Cir. 1993).

With regard to determining whether a party's neglect of a deadline is excusable, the Supreme Court has held that "the determination is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship, 507 U.S. 380, 395 (1993); see also Fink v. Union Central Life Ins. Co., 65 F.3d 722, 724 (8th Cir. 1995) (applying Pioneer analysis to FRAP 4(a)(5) context). "These include . . . the danger of prejudice to the [nonmovant], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was

_____

[3] As explained in the advisory committee note to the 2002 Amendment to Rule 4(a)(5), effective December 1, 2002, a motion brought under Rule 4(a)(5) may be granted for either excusable neglect *or* good cause.  See Fed. R. App. P. 4 advisory committee's note.  The amendment corrects the previous interpretation adopted by most circuits, including this one, which held that the "good cause" standard applies only to motions brought prior to the expiration of the original deadline and that motions brought during the thirty days after the original deadline must satisfy the more exacting "excusable neglect" standard.  See id. (citing Pontarelli v. Stone, 930 F.2d 104, 109-10 (1st Cir. 1991) (collecting cases from the Second, Fifth, Sixth, Seventh, Eighth, Ninth, and Eleventh Circuits)).  As further explained in the advisory notes, the good cause standard "applies in situations where there is not fault–excusable or otherwise[;]" i.e., "the need for an extension is . . . occasioned by something that is not within the control of the movant."  Id. (citing Lorenzen v. Employees Ret. Plan, 896 F.2d 228, 232 (7th Cir. 1990)).  The district court's order in this case pre-dates the 2002 Amendment.  Under our interpretation of the rule at that time, the good cause standard was inapplicable.  Nevertheless, the district court explicitly noted at the conclusion of its opinion that the plaintiffs had not established good cause.  We agree that there are no allegations in this case that would support a good cause finding, and, like the district court, we focus our review on the plaintiffs' showing of excusable neglect.

3

within the reasonable control of the movant, and whether the movant acted in good faith." Pioneer, 507 U.S. at 395. "The four Pioneer factors do not carry equal weight; the excuse given for the late filing must have the greatest import." Lowry v. McDonnell Douglas Corp., 211 F.3d 457, 463 (8th Cir. 2000). "While prejudice, length of delay, and good faith might have more relevance in a closer case, the reason-for-delay factor will always be critical to the inquiry." Id.

By affidavit included with the Rule 4(a)(5) motion, the plaintiffs' former counsel, Jane E. Colhoff, avers that an extended vacation and subsequent illness are the sole factors that prevented an appeal from being timely filed. Ms. Colhoff attests that on August 3, 2001, the day that the dismissal order was issued, she was on her way to Alaska for a vacation which was expected to last until mid- or late-September. She is a solo practitioner with no support staff or employees. During her extended absence, she had her mail held at the post office. Ms. Colhoff returned home on September 7, earlier than expected, "because she became ill while in Alaska." She picked up her accumulated mail that same day. She states, however, that "[b]ecause [she] was extremely ill at the time [she] retrieved this mail, [she] did not review it immediately or contact the plaintiffs to determine their wishes regarding a potential appeal." Ms. Colhoff further avers that she "was ill for several weeks and was not able to devote attention to this legal matter until early October." On October 9, Ms. Colhoff contacted another attorney about appealing the case, at which time he advised her that the appeal period had expired the previous week, on October 3. The motion for extension was filed on October 19.

We find no abuse of discretion in the district court's determination that the plaintiffs failed to show excusable neglect.[4] While there will likely be cases where

---

[4] We reject the plaintiffs' contention that the district court's failure to explicitly balance the Pioneer factors mandates reversal. The district court referenced the

an attorney's serious illness merits relief under Rule 4(a)(5), see, e.g., Islamic Republic of Iran v. The Boeing Co., 739 F.2d 464 (9th cir. 1984) (affirming grant of extension under Rule 4(a)(5) where the attorney's illness "was of such character and magnitude that counsel was both physically and mentally incapacitated during the crucial period of time"), we find no error in the district court's conclusion that this is not such a case. Ms. Colhoff's affidavit provides no specific information as to the nature of her illness, treatment, and/or rehabilitation. Further, as succinctly stated by the district court, "[t]he fact that counsel became ill does not excuse the period of time when she was not ill." For over half of the sixty days in which the plaintiffs could have filed a notice of appeal, plaintiffs' counsel was vacationing and made no arrangements for management of her active cases even though she had a motion pending before the court. See Marsh v. Richardson, 873 F.2d 129, 131 (6th Cir. 1989) (reversing district court's grant of extension under Rule 4(a)(5) and noting that an attorney's failure to have in place a system to apprise him of case-related matters that arose during a two-week vacation "indicate[d] a serious lack of diligence and inattention to the everyday detail of the practice of law."). Finally, we discern no persuasive explanation for Ms. Colhoff's failure to take appropriate measures for the administration of her cases upon her return and realization that her illness would preclude her from personally attending to them.

Notwithstanding the relatively flexible Pioneer standard, "there still must be a satisfactory explanation for the late filing." Graphic Communications Int'l Union,

Pioneer factors in its opinion, and its decision to focus on the reason for delay–the "critical inquiry" in the excusable neglect determination–is reasonable under the facts of this case. Because the dismissal of the underlying suit was on the merits, the judicial disfavor for default dispositions is not implicated and the danger of prejudice to the nonmovants is lessened. The length of delay and good faith factors are, at best, neutral and thus lend little to no persuasive weight to the plaintiffs' case. In sum, this is not the "close case" forecast in Lowry in which these other factors may be of particular relevance. See Lowry, 211 F.3d at 463.

<u>Local 12-N v. Quebecor Printing Providence, Inc.</u>, 270 F.3d 1, 5 (1st Cir. 2001). Ms. Colhoff's affidavit fails to provide one. Instead, it demonstrates a marked indifference to a pending matter for more than two months despite obvious points where earlier missteps might have been mitigated. <u>See</u> <u>Lowry</u>, 297 F.3d at 464 (finding Rule 4(a)(5) relief inappropriate where "what we have . . . is garden-variety attorney inattention."). While "Congress plainly contemplated that the courts would be permitted, where appropriate, to accept late filings caused by inadvertence, mistake, or carelessness, . . ." <u>Pioneer</u>, 507 U.S. at 388, this is not a case where such action would be appropriate. <u>See</u> <u>Graphic Communications</u>, 270 F3d at 8 ("To find this neglect to be 'excusable' would only serve to condone and encourage carelessness and inattention in practice before the federal courts, and render the filing deadline set in Fed. R. App. P. 4(a)(1) a nullity.").

As this court has previously stated, "at the end of the day, the focus must be upon the nature of the neglect." <u>Lowry</u>, 211 F.3d at 463. We agree with the district court's conclusion that the nature of the neglect in this case is not of a type which merits relief under Rule 4(a)(5). Accordingly, we affirm the district court's denial of the plaintiffs' motion for extension of time to file a notice of appeal.

A true copy.

Attest.

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

6