STATE OF VERMONT

ENVIRONMENTAL COURT

|  | } |  |
| --- | --- | --- |
| In re: Jim Sheldon Excavating, Inc. and | } | Docket No. 54-4-09 Vtec |
| Taran Bros., Inc. Act 250 Land Use Permit | } | |
| (Appeal of Pelton) | } | |

Decision and Order on V.R.A.P. 4 Motion for Extension of Time to File Appeal

Movant Martha Pelton, through her daughter Marleigh Pelton McNealus, has moved pursuant to V.R.A.P. 4(d) for an extension of time to file a late appeal from a decision of the District 1 Environmental Commission (District Commission), issuing Act 250 Land Use Permit No. 1R0949 to Applicant-Permittees Jim Sheldon Excavating, Inc. and Taran Brothers, Inc. Ms. Pelton is represented by Stephen A. Reynes, Esq. and Jesse L. Moorman, Esq.; Applicant-Permittee Jim Sheldon Excavating, Inc. is represented by Elizabeth A. Boepple, Esq. Neither Taran Brothers, Inc. nor the Land Use Panel of the Natural Resources Board has entered an appearance in this appeal.

In its June 8, 2009 decision in this matter, this Court distinguished between the "good cause" and "excusable neglect" prongs of V.R.A.P. 4(d), and determined that the circumstances of Movant's receiving late notification of the issuance of the permit did not constitute "good cause" for filing a late appeal.[1] In that decision, the Court provided an extensive analysis of the factors to be considered in ruling on a V.R.A.P.

---

[1] As discussed in that decision, the District Commission service list reflected a typographical error in the postal code for Ms. Pelton's address that had not been corrected by Ms. McNealus during her prior participation in the proceedings before the District Commission. The error meant that the mailings were delayed by going first to Florence, also in Rutland county, before they were received at Ms. Pelton's address. The parties did not provide information in their affidavits as to whether the envelopes of earlier mailings received by Ms. McNealus reflected the rerouting of those earlier mailings.

1

4(d) motion.[2]  That decision determined that Movant's failure to file a notice of appeal (or even to inquire of the Environmental Court as to the procedure for filing a notice of appeal or requesting an extension of time to do so) during the period from March 13 through March 30, 2009, would have to be analyzed under the criteria applicable to a claim of excusable neglect.

As the parties' initial motion filings had focused on issues falling primarily under the "good cause" prong of V.R.A.P. 4(d), the decision allowed the parties the opportunity to present supplemental memoranda and additional affidavits or other factual material in support of their positions on the "excusable neglect" criteria, in light of the Court's analysis.  The June 8, 2009 decision stated that, in the absence of any additional evidence, the balancing of the factors discussed in the decision "requires the denial of the motion, due to the prejudice to Appellee-Applicant from allowing a late appeal."  In re: Jim Sheldon Excavating, Inc. and Taran Bros., Inc. Act 250 Land Use Permit, No. 54-4-09 Vtec, slip op. at 8 (Vt. Envtl. Ct. June 8, 2009) (Wright, J.).  The decision also allowed the parties to request an evidentiary hearing on the motion if any material facts were disputed, especially as to any party's state of mind.  Id. at 8–9.

The parties subsequently provided supplemental memoranda, and Ms.

---

[2]  V.R.A.P. 4(d) was amended in 2006 to eliminate the distinction in the procedure for filing a motion to extend the time to file an appeal based on "good cause" as opposed to "excusable neglect."  Before the amendment, motions based on "good cause" could only be filed before the original appeal period expired, while motions based on "excusable neglect" could be filed at any time within 30 days after the original appeal period expired.  Although the 2006 amendment eliminated the time differential between the two types of reasons for late filing, allowing all such motions to be filed during the thirty-day period after the expiration of the appeal period, good cause and excusable neglect "continue to reflect different standards."  V.R.A.P. 4(d), Reporter's Notes.  Good cause refers to situations in which the movant bears no fault for failing to file a timely appeal, while excusable neglect refers to situations in which the movant bears some fault, but that fault is excusable.

McNealus provided an additional affidavit.[3] Mr. Sheldon also filed a supplemental affidavit, which has not been considered in relation to the present decision as it was not filed in compliance with the schedule provided in the order. Neither party requested an evidentiary hearing. Facts and legal analysis addressed in the Court's June 8, 2009 decision regarding this motion are repeated in this decision only as necessary.

Applicants applied for an Act 250 permit seeking as-built approval of a concrete batch plant and gravel processing facility located on Route 149 in the towns of Pawlet and Wells, in Rutland county. Ms. Pelton owns residential property adjacent to or across the road from the project property. Ms. Pelton's daughter, Marleigh Pelton McNealus, holds a general power of attorney to act as Ms. Pelton's representative, as Ms. Pelton has Alzheimer's disease. Ms. McNealus, her husband, and their two school-aged children live with Ms. Pelton at Ms. Pelton's house.

Ms. McNealus is an optician and is the president of Manchester Eye Care, an optician's practice in Manchester Center, Vermont. Neither of her affidavits reveals her husband's line of work or present job or profession. As of the filing of the supplemental affidavit, their daughter was ten years old and their son, who has been diagnosed with attention deficit disorder, was six years old.

During the period at issue regarding the present motion, Ms. McNealus continued to serve in her professional capacity with Manchester Eye Care. Her affidavit reflects that her normal household responsibilities of taking care of her mother and the two children are time-consuming.[4] In the morning she wakes the children, gets them

---

[3] Ms. McNealus' supplementary affidavit was notarized and filed with the Court in mid-June of 2009, and was evidently filed in response to the Court's June 2009 decision, despite the fact that the month of April rather than June is typed in on the line above Ms. McNealus' signature. Ms. McNealus did not correct the month designation before signing the affidavit.

[4] By referring to these responsibilities as "normal" the Court does not minimize the stress that such responsibilities may place upon a household, especially when they

bathed and fed, gives her son his medication and drives the children to school.  She then returns home to wake, bathe and feed her mother, and to make sure that her mother "has her medications," before Ms. McNealus goes to work.  McNealus Supp. Aff. ¶ 4.  Ms. McNealus also leaves her office to take her mother to scheduled appointments as necessary.  Her affidavit does not disclose her husband's contribution to the normal daily family schedule, nor whether any outside caregivers participate in the normal daily care of Ms. Pelton.

During the last two weeks of March, Ms. McNealus' son was being evaluated for attention deficit disorder; in connection with that evaluation, she received several "lengthy" telephone calls from his teachers.  Id. ¶ 18.  The end of March and beginning of April each year is also the period during which Ms. McNealus is normally responsible for "assembling information" to be used in the preparation of tax filings for her family, for her business, and for her mother; her affidavit characterizes this process as being "a complex and involved process for [her]."  Id. ¶ 19.

At Manchester Eye Care on March 12, 2009, Ms. McNealus received a visit from an IRS agent, resulting in a request for certain of her business records.  The experience of this visit, and the task of assembling her business records in response to this request,

---

involve conditions such as Alzheimer's disease or attention deficit disorder. Nevertheless, the test for excusable neglect requires the Court to distinguish between a movant's normal responsibilities and personal problems, and neglect that is due to "unique and extraordinary circumstances."  See, e.g., Chipperfield v. Posi-Seal Int'l, 550 F.Supp 1322, 1323 (1982) (concluding that  "upheaval in . . . personal and professional life" between the decision and the close of the thirty-day period for the filing of a notice of appeal did not amount to excusable neglect); Graphic Commc'ns Int'l Union, Local 12-N v. Quebecor Printing Providence, Inc., 270 F.3d 1, 8 (1st Cir. 2004) (stating that although the U.S. Supreme Court, in Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship, 507 U.S. 380 (1993), replaced the prior "excusable neglect" test based solely on a finding of "unique and extraordinary circumstances," that standard could still be used "not as a talisman, but as a check on [a Court's] conclusion that [a certain] degree of carelessness and inattention warrant[s] no relief").

was "very time-consuming and stressful" for Ms. McNealus.  Id. ¶ 20.

As described in this Court's prior decision, the District Commission issued its decision granting the permit on February 26, 2009.  The decision was mailed to the correct address, but using the incorrect zip code, so that Ms. McNealus received the decision on or no later than March 13, 2009.  As of Friday, March 13, 2009, she had seventeen days, until March 30, 2009, to timely file a notice of appeal on behalf of Ms. Pelton.[5]

The District Commission's decision included the four-page Land Use Permit #1R0949, dated February 26, 2009, which has been provided to the Court.[6]  After two explanations unrelated to the present motion (one about filing motions to alter and the other about decisions on minor applications) the Land Use Permit clearly states the following two paragraphs on the fourth page, below the Chairman's signature:

> Please note that there are certain limitations on the right to appeal.  See 10 V.S.A. § 8504(k).  Any appeal of this decision must be filed with the clerk of the Environmental Court within 30 days of the date of issuance, pursuant to 10 V.S.A. Chapter 220.  The appellant must attach to the Notice of Appeal the entry fee of $225.00, payable to the State of Vermont.

> The Notice of Appeal must include all information required by Rule 5(b)(3) of the Vermont Rules for Environmental Court Proceedings (VRECP).  The appellant must also serve a copy of the Notice of Appeal in accordance with Rule 5(b)(4)(B) of the VRECP.  For further information, see the Vermont Rules for Environmental Court Proceedings, available on line at www.vermontjudiciary.org.  As of February 14, 2005 the address for the Environmental Court is:  Environmental Court, 2418 Airport Rd., Suite 1, Barre, VT 05641-8701.  (Tel. # 802-828-1660).

> Ms. McNealus stated in her supplemental affidavit that upon receiving the

---

[5] Because the 30th day after issuance of the decision fell on Saturday, March 28, 2009, Ms. Pelton had until the following Monday, March 30, 2009, to file her appeal.  See V.R.C.P. 6(a), made applicable to this Court by V.R.E.C.P. 5(a)(2).

[6]  Neither party has provided the Court with the "Findings of Fact and Conclusions of Law" associated with the District Commission decision.

District Commission's decision she was "in shock and confused" about it, that she thought she "had lost," and that she thought that the "decision was final and that [she] had no recourse." McNealus Supp. Aff. ¶ 5. She stated that she "did not notice the information about filing an appeal included at the end of the lengthy decision." Id. On March 13, 2009, Ms. McNealus did not notice or pay attention to the information provided in the decision as to when and how to take an appeal, including the address and telephone number for the Environmental Court. As of March 13, 2009, Ms. McNealus still had seventeen days to call the Environmental Court to inquire about her options, to timely file a notice of appeal, or to inquire about how to request more time to file an appeal.

Instead, on Tuesday, March 17, 2009, she telephoned the District Coordinator, Bill Burke, about the decision. They must have discussed the possibility of appeal, as Ms. McNealus stated in her supplemental affidavit that "Mr. Burke explained to me that I had until 30 March to appeal the decision to the Environmental Court." Id. ¶ 6.

Nevertheless, from her receipt of the decision March 13, 2009, to the filing of the present motion on April 6, 2009,[7] Ms. McNealus did not even contact the Environmental Court by telephone to inquire about the deadline or about how to file a notice of appeal, or to tell the Court that she was attempting to locate a lawyer to assist her. Many unrepresented appellants file notices of appeal in Environmental Court; the staff is trained to answer their procedural questions by telephone, and especially to explain jurisdictional time limits. Ms. McNealus did not file a notice of appeal, and did not request an extension of the appeal period, until the present motion.

Without contacting the Environmental Court to inquire as to how to file a notice of appeal or whether it would be necessary to have an attorney to file a notice of appeal,

_____

[7] Her request for an extension of time to appeal was filed with the Court seven days after the appeal period had expired and twenty-four days after she received notice of the District Commission's decision; the motion itself was timely under V.R.A.P. 4(d).

Ms. McNealus made the assumption that she would need to consult with an attorney prior to filing an appeal. Her affidavit makes it clear that she simply "did not believe [that she] could file the appeal on [her] own and thought only of contacting an attorney for help and guidance." Id. ¶ 7.

After speaking with the District Coordinator on March 17, 2009, Ms. McNealus first discussed the hiring of an attorney with her brother, who lives in Stowe, Vermont. He is a joint fiduciary with her for their mother, and would have to agree to incurring legal expenses. Her affidavit does not state when that conversation occurred, but he evidently did agree, and she does not claim that it in any way delayed her efforts to "locate an attorney with whom [she] could consult on the possibility of appealing the decision." Id. She did not speak with the first of the possible attorneys until six days after speaking with the District Coordinator on March 17, 2009.

Ms. McNealus contacted six attorneys between March 23 and March 31, 2009, when she spoke with her present counsel. Her affidavit does not reflect whether any of the attorneys with whom she spoke discussed the expiration of the appeal period with her. Her present counsel met with her on April 5, 2009, and filed this motion for late appeal on April 6, 2009.

This Court's prior decision discussed the factors for evaluating a party's claim of excusable neglect, as laid out by the U.S. Supreme Court in Pioneer, 507 U.S. at 395; and applied by the Vermont Supreme Court in In re Town of Killington, 2003 VT 87A, ¶ 16, 176 Vt. 60.[8] Under Pioneer and the Vermont and federal cases applying it,[9] in

---

[8] In analyzing the meaning of "excusable neglect" in Pioneer, the U.S. Supreme Court evaluated how that term was applied under all of the Federal Rules of Civil Procedure that used the term "excusable neglect," including Rule 60(b) motions, motions for relief from default, and motions for a late appeal. Pioneer, 507 U.S. at 391–95.

[9] "This Court applies federal case law as persuasive authority to clarify the excusable neglect standard under V.R.A.P. 4 because the rule is substantially identical to [the

exercising its discretion the Court must consider "the danger of prejudice to the [non-movant], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." Pioneer, 507 U.S. at 395; see also, e.g., Town of Killington, 2003 VT 87A, ¶ 16; In re Lund, 2004 VT 55, ¶ 5, 177 Vt. 465 (mem.). As discussed in the prior decision, the present motion does not involve a long delay, and there is no persuasive evidence of a lack of good faith. The remaining two factors, the reason for the delay and the danger of prejudice, must be addressed in light of the supplemental affidavit presented by Movant.

The factors for evaluating a party's claim of excusable neglect are not applied formulaically. "No single circumstance controls, nor is a court to simply proceed down a checklist ticking off traits. Instead, courts are to look for a synergy of several factors that conspire to push the analysis one way or the other." In re 50-Off Stores, Inc., 220 B.R. 897, 901 (Bankr. W.D. Tex. 1998), quoted with approval in In re Enron Corp., 419 F.3d 115, 124 (2d. Cir. 2005). Although Pioneer established a more flexible standard than had been previously applied to such motions, it remains appropriate for the court to consider whether the circumstances claimed as excusable neglect are "unique or extraordinary circumstances." See Graphic Commc'ns Int'l Union, 270 F.3d at 8 (1st Cir. 2004) (stating that although Pioneer replaced the prior "excusable neglect" test based solely on a finding of "unique and extraordinary circumstances," that standard could still be used "not as a talisman, but as a check on [a Court's] conclusion that [a certain] degree of carelessness and inattention warrant[s] no relief"); Mirpuri v. ACT Mfg., Inc., 212 F.3d 624, 631 (1st Cir. 2000) (stating that even under Pioneer a "would-be appellant must demonstrate unique or extraordinary circumstances").

The Vermont Supreme Court has "warned that, despite the flexible standard

federal rule]." Town of Killington, 2003 VT 87, ¶ 16 (citing State v. Felix, 153 Vt. 170, 171 (1989)).

8

announced in <u>Pioneer</u>, ignorance of the law or inattention to detail would rarely constitute excusable neglect."[10] <u>In re Lund</u>, 2004 VT 55, ¶ 5 (citing <u>Town of Killington</u>, 2003 VT 87A, ¶¶ 17–18); see also <u>Pioneer</u>, 507 U.S. at 392 ("[I]nadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute 'excusable' neglect."); <u>Silivanch v. Celebrity Cruises, Inc.</u>, 333 F.3d 355, 366–67 (2d. Cir. 2003) ("[E]quities will rarely if ever favor a party who 'fail[s] to follow the clear dictates of a court rule" and . . . where 'the rule is entirely clear, we continue to expect that a party claiming excusable neglect will, in the ordinary course, lose under the <u>Pioneer</u> test.'" (quoting <u>Canfield v. Van Atta Buick/GMC Truck, Inc.</u>, 127 F.3d 248, 250–51 (2d. Cir. 1997) (per curiam)).

Ms. McNealus received the District Commission's decision on March 13, 2009; her inattention to the information clearly provided at the end of that decision as to how to appeal or how to contact the Environmental Court does not constitute excusable neglect. Particularly after being informed by the District Coordinator on March 17, 2009, that she had until March 30, 2009, to appeal to the Environmental Court, she knew the deadline for filing the appeal and had the information necessary to do so or, in the alternative, to inquire of the Court regarding how to do so or how to apply to extend the time period for appeal.

Ms. McNealus' other important responsibilities during this time, including caring for her mother, taking care of her family, preparing information necessary for her family's and her business' taxes, and otherwise running her business, undoubtedly took up her time and attention. However, these responsibilities were not unexpected, no matter how stressful. In the "absence of unique or extraordinary circumstances" that

---

[10]    In an unreported appeal, the Supreme Court applied this high threshold to an unrepresented litigant, noting that the unrepresented party's "ignorance of the law and facts does not provide a basis for finding excusable neglect." <u>Batchelder v. Gold</u>, No. 2003-185, slip op. at 3 (Vt. April 2004) (unpublished mem.).

arise during the appeal period, courts continue to find no excusable neglect. <u>In re Enron Corp.</u>, 419 F.3d at 123–24 (citing <u>Graphic Commc'ns Int'l Union</u>, 270 F.3d at 5).

Serious illness or a death in the family may constitute excusable neglect if the illness or death is unexpected, occurs during the appeal period, and overwhelms a party's counsel. See, e.g., <u>San Juan City Coll. v. United States</u>, 75 Fed. Cl. 540, 542–43 (2007) (citing <u>Graphic Commc'ns Int'l Union</u>, 270 F.3d at 5); see also <u>Local Union No. 12004, United Steelworkers Of America v. Massachusetts</u>, 377 F.3d 64, 72 (1st Cir. 2004) (finding of excusable neglect where party's attorney failed to file appeal due to unexpected illness of attorney's infant son). Without minimizing the difficulties in caring for a parent with Alzheimer's disease, or in handling the recurring responsibilities of a family and a business, Ms. McNealus does not cite any unusual or unexpected circumstances which arose during the appeal period from her mother's condition that reasonably kept Ms. McNealus from filing an appeal or at least contacting the Court.

Rather, the only unexpected occurrence during the relevant period was the visit of the IRS agent to Ms. McNealus' business. While she understandably felt anxiety about responding to the request for business records resulting from this visit, and found it time-consuming and stressful to respond to that request, it was not the sort of unique and extraordinary circumstance that could justify a failure to comply with "the clear dictates of a court rule" of which she had both record and actual knowledge. <u>Silivanch</u>, 333 F.3d at 266 (quoting <u>Canfield</u>, 127 F.3d at 250–51).

Ms. McNealus primarily seeks to justify her decision not to file an appeal, despite her knowledge of the March 30, 2009 deadline, based on her difficulties in obtaining the services of an attorney. During the final week of the appeal period Ms. McNealus made serious efforts to retain legal counsel, but she did not succeed in doing so until the day after the appeal period had run.

The inability to retain counsel does not constitute excusable neglect in the

absence of the unrepresented party's making any effort to enter an appearance or to explain the situation to the court. See Sprint Commc'ns Co. LP v. Ucon Telecommc'ns Network, Inc., 138 Fed.Appx. 607, 609 (5th Cir. 2005) ("[F]ailure to timely appeal . . . due to [party's] inability to obtain qualified appellate counsel . . . is not a sufficient basis for the requisite good cause or excusable neglect; and [the party had] cited no case holding that it is."); see also U.S. v. A Single Story Double Wide Trailer, 727 F.Supp. 149, 154 (D. Del. 1989) ("[R]epeated efforts to find an attorney do not constitute excusable neglect where the claimant does not attempt to enter a pro se appearance or to explain the situation to the opposing party or the court.").[11]

In this case, the rule was clear that an appeal must be filed by March 30, 2009, and Ms. McNealus was on record notice of that deadline by March 13, 2009, and on actual notice of that deadline by March 17, 2009. She did not even call the Court to inquire about her options. Because she did not avail herself of the opportunity, her lack of knowledge regarding the possibility that she could file the appeal (or request more time to file the appeal) before obtaining a lawyer does not amount to excusable neglect.

If the appeal time is extended for a litigant who has been personally informed of the appeal deadline and the contact information for the Court, but who does not even telephone the Court to inquire about how to file an appeal or request an extension, it would frustrate the goal of finality and result in a "de facto enlargement of the appeal-filing time to 60 days." Town of Killington, 2003 VT 87A, ¶ 17. Regardless of the prejudice to the potential appellee in this specific case, discussed below, such a practice would also be unfair to the many unrepresented (as well as represented) appellants

---

[11] The "excusable neglect" analysis in this case pertains to a motion to set aside a default judgment under F.R.C.P. 60(b). Single Story Double Wide Trailer, 727 F.Supp. at 151. However, it is useful in our interpretation of "excusable neglect." Indeed, the Supreme Court in analyzing the meaning of "excusable neglect" in Pioneer evaluated how that term was applied under all of the Federal Rules of Civil Procedure that included the term "excusable neglect." Pioneer, 507 U.S. at 391–95.

11

who do make sufficient inquiry of the Court to file timely appeals.

Beyond the reason for delay, in this case the danger of prejudice to the potential appellee is great. In the absence of an appeal, Applicant-Permittee's Act 250 Permit became final when the 30-day appeal period expired. Because the permit became final, allowing a late appeal in the present case presents far greater prejudice to the non-moving party than existed in In re Rinker's, Inc., No. 302-12-08 Vtec (Vt. Envtl. Ct. Mar. 25, 2009) (Wright, J.), in which the initial appeal continued regardless of whether a late cross-appeal was or was not allowed under V.R.A.P. 4. Id. at 1–2.

Unlike cases involving money damages, in which the delay due to an appeal simply can be compensated by an award of interest, the finality of an Act 250 permit means that a permittee can move forward with the proposed project. Even if no stay is obtained during an appeal, a permit applicant is prejudiced by a late appeal, due to the risk that a project may have to be changed or that the permit might be denied in the de novo appeal proceedings before this Court.

Accordingly, based on the foregoing, it is hereby ORDERED and ADJUDGED that Movant's Motion for Extension of Time to File an Appeal is DENIED, as the circumstances do not constitute good cause, as discussed in the June 8, 2009 decision, and do not constitute excusable neglect.

Done at Berlin, Vermont, this 14th day of December, 2009.

_____
Merideth Wright
Environmental Judge

12