**Penny L. PRICE and, Roy R. Price, Jr., Plaintiffs,**

v.

**GENERAL CABLE INDUSTRIES, INC., International Union of Electronic, Electrical, Salaried Machine and Furniture Workers of America (IUE–CWA), Defendants.**

**Civil Action No. 3:05–424.**

United States District Court, W.D. Pennsylvania.

Nov. 20, 2006.

Thomas M. Dickey, Law Offices of Thomas M. Dickey, Altoona, PA, for Plaintiffs.

Brian F. Jackson, McNess, Wallace & Nurick, Harrisburg, PA, Christina V. Bonavita, Tara G. Perillo, Blank Rome, Philadelphia, PA, Jennifer E. Will, Marysville, PA, Robert A. Eberle, Jubelirer, Pass & Intrieri, Pittsburgh, PA, for Defendants.

### MEMORANDUM OPINION and ORDER

GIBSON, District Judge.

Now before the Court is Plaintiffs' Petition to File Appeal to Third Circuit *Nunc Pro Tunc* (Document No. 26) and Defendants' Response thereto (Document No. 29). In November 2005, Plaintiffs' case—premised on claims for wrongful termination, breach of contract, and discrimination, as well as state-law tort allegations—was removed from the Court of Common Pleas of Blair County, Pennsylvania. Document No. 1. The Court dismissed the Complaint without prejudice on January 4, 2006, and dismissed the Amended Complaint with prejudice on September 29, 2006. Document Nos. 15 & 25. Under the federal rule granting thirty days for the appeal of a final judgment, Plaintiffs had until October 30, 2006, to notice this Court of their intent to appeal the dismissal of their Amended Complaint.[1] After no such notice was filed, Plaintiffs submitted the Petition *sub judice* on November 2, 2006, seeking discretionary leave to proceed with their appeal.

■ According to FED. R.APP. P. 4(a)(5), this Court may

extend the time to file a notice of appeal if: (i) a party so moves no later than 30 days after the time prescribed by this Rule 4(a) expires; and (ii) regardless of whether its motion is filed before or during the 30 days after the time pre-

scribed by this Rule 4(a) expires, that party shows excusable neglect or good cause.

Plaintiffs' Petition is timely under subsection (i) but cannot succeed unless the Court finds that excusable neglect or good cause explains the failure to satisfy Rule 4(a)(1). "[T]he standard for determining excusable neglect is a strict one" and is meant to permit untimely appeals only in "extraordinary cases where injustice would otherwise result." *Consol. Freightways Corp. v. Larson,* 827 F.2d 916, 918 (3d Cir.1987) (citations omitted). The Third Circuit has held that five factors are particularly relevant to a Rule 4 excusable neglect inquiry:

(1) whether the inadvertence reflects professional incompetence such as ignorance of the rules of procedure; (2) whether the asserted inadvertence reflects an easily manufactured excuse incapable of verification by the court; (3) whether the tardiness results from counsel's failure to provide for a readily foreseeable consequence; (4) whether the inadvertence reflects a complete lack of diligence; or (5) whether the court is satisfied that the inadvertence resulted despite counsel's substantial good faith efforts toward compliance.

*Consol. Freightways,* 827 F.2d at 919–20 (citations omitted). Also pertinent are the length of the delay and any possible prejudice to the nonmovant. *Id.* at 920.

■ Counsel for Plaintiffs attempted to discuss the possibility of appeal with his clients subsequent to the September 29 dismissal of the Amended Complaint, but asserts that "an interruption in Plaintiffs' phone service" prevented any communication until November 2. Document No. 26,

---

1. FED. R.APP. P. 4(a)(1) provides that "In a civil case . . . the notice of appeal required by Rule 3 must be filed with the district clerk within 30 days after the judgment or order appealed from is entered."

¶¶ 6–7. This is the only circumstance on which Plaintiffs' Petition is based and the Court is unable to find that it justifies any delay in noticing their appeal. First, the brevity of the Petition indicates the lack of evidence with which the Court might verify what it otherwise concludes is an easily manufactured excuse. Also probative is the ease with which Counsel apparently found his clients unreachable. Due diligence requires that an attorney at least try some alternative method of contact— mail, for instance—before deciding that client communications are impossible. Furthermore, Rule 4(a)(5)(B) allows for *ex parte* motions to extend the thirty-day window for noticing appeal any time prior to the expiration of that period. That Counsel did not anticipate the October 30 deadline and act accordingly demonstrates an ignorance of the procedural rules and a thorough—if not a complete—lack of diligence. The length of delay is not considerable, and nonmovants have not shown that leave to appeal *nunc pro tunc* would result in any prejudice. Nonetheless, Counsel's unreasonable failure to exercise any degree of control over the situation reflects professional incompetence and a lack of good faith effort toward compliance. Even if the Court did verify the proffered excuse, the proven facts would only confirm Counsel's negligence in foreseeing and forestalling the impending consequences. The Court cannot consider such failure excusable.

Some turbulence attends the jurisprudence of good cause. First, while at least one court has gleaned from the disjunctive language of Rule 4 "a limited basis for granting an extension in those circumstances that are unsuited to traditional excusable neglect analysis," *Virella–Nieves v. Briggs & Stratton Corp.*, 53 F.3d 451, 453 (1st Cir.1995), the majority of courts, including the Third Circuit, have previously perceived in the Rule a question of timing: "Any request for extension filed after the original period has run is governed by the excusable neglect standard." *Consol. Freightways Corp.*, 827 F.2d at 918 n. 3. *See also Thompson v. E.I. DuPont de Nemours & Co.*, 76 F.3d 530, 532–33 (4th Cir.1996) (relying on cases from eight other circuits in concluding that "the 'good cause' standard is only applicable to motions for enlargement of time filed within thirty days of the entry of judgment"). Recent amendments to FED. R.APP. P. 4, however, suggest that this body of precedent has been superseded:

> These courts ... relied heavily upon [an] Advisory Committee Note [that] refers to a draft of the 1979 amendment that was ultimately rejected.... A motion for an extension filed prior to the expiration of the original deadline may be granted if the movant shows either excusable neglect or good cause. Likewise, a motion for an extension filed during the 30 days following the expiration of the original deadline may be granted if the movant shows either excusable neglect or good cause.

FED. R.APP. P. 4, 2002 advisory committee's note. *See also Pontarelli v. Stone*, 930 F.2d 104, 110 (1st Cir.1991) ("[T]he language of [Rule 4(a)(5) ], which hardly could be clearer, in no way intimates that 'good cause' is to be utilized exclusively in the evaluation of [Rule 4(a)(5)] requests submitted within the thirty-day period for lodging an appeal as a matter of right.").

■ Secondly, Defendants maintain, and at least one court has concluded, that the standards for excusable neglect and good cause are indistinguishable in the Third Circuit. *See* Defendants' Memorandum in Opposition (Document No. 28), p. 3 (citing *Amatangelo v. Borough of Donora*, 212 F.3d 776, 780 (3d Cir.2000)); *Adefumi v. City of Philadelphia*, No. 04–5565, 2003 WL 22797460, *1, 2003 U.S. Dist. LEXIS

21075, *3 (E.D.Pa. Nov. 14, 2003) (citing indirectly *Amatangelo* and *Petrucelli v. Bohringer & Ratzinger*, 46 F.3d 1298, 1304 n. 11 (3d Cir.1995)). Surveying the caselaw marshaled in support of this proposition, the Court respectfully disagrees. The *Petrucelli* court was concerned with the Federal Rules of Civil Procedure and did not consider how good cause and excusable neglect interact within FED. R.APP. P. 4. Further, *Amatangelo* merely suggested in dicta what the language of Rule 4 states expressly: "[A] district court should not grant the extension absent a showing of excusable neglect or good cause." *Amatangelo*, 212 F.3d at 780. Though that court may have declined the opportunity to formally distinguish between the two standards, neither did it hold them coterminous. Moreover, to consider good cause indistinguishable from excusable neglect needlessly renders Rule 4 redundant. Therefore, in light of the express language of the statute, the 2002 Amendments thereto, and the Third Circuit's silence on this issue, the Court finds that neither its refusal to excuse Counsel's neglect nor the language of *Consolidated Freightways* prevents it from granting the requested leave if good cause was responsible for the offending delay.

Though the Court aligns itself with the First Circuit's ruling that good cause can justify an extension where excusable neglect does not, the contours of the good cause analysis are largely undefined. The Court's research suggests that there has been little development in this area since the Seventh Circuit noted that "there are no reported decisions on the meaning of 'good cause.'" *Lorenzen v. Employees Ret. Plan of Sperry & Hutchinson Co.*, 896 F.2d 228, 232 (7th Cir.1990). For some guidance, the Court thus returns to the Advisory Committee's Note, which provides one illustration: "If . . . the Postal Service fails to deliver a notice of appeal, a movant might have good cause to seek a post-expiration extension. It may be unfair to make such a movant prove that its 'neglect' was excusable, given that the movant may not have been neglectful at all." FED. R.APP. P. 4, 2002 advisory committee's note.

This distinction—applying excusable neglect when negligence is involved and good cause when circumstances beyond the movant's control cause delay—would slightly muddle existing caselaw. For instance, the Third Circuit considered a situation identical to that of the Advisory Committee's illustration and decided the matter purely on grounds of excusable neglect. *Ramseur v. Beyer*, 921 F.2d 504, 507 (3d Cir.1990). Nonetheless, the Court finds that the Committee's Note provides a sensible and persuasive reading of the statute. Not only does its distinction comport with the express language of Rule 4 by defining good cause as something other than excusable negligent, but it also alleviates the lack of judicial interpretation of that term: A more structured and exacting analysis is appropriate where a party seeks protection from his own negligence; where a litigant is the victim of unforeseeable circumstances, however, justice permits greater discretion.

■ According to this analysis, the Court need not determine whether Plaintiffs' failure to notice their appeal was due to good cause. A failure to communicate for thirty days redounds against no one but client and counsel. Any claim that the intervention of an unforeseeable circumstance is wholly responsible for the delay in this case would be fallacious. Plaintiffs' only recourse for leave to proceed on appeal therefore fails due to their inability to demonstrate excusable neglect. The absence of any independent and uncontrollable intervening circumstance makes good

cause impossible. Moreover, the Court notes that even if it did pursue a good cause analysis, the outcome would not change. Counsel had thirty days to ascertain Plaintiffs' desire for an appeal. In the event Plaintiffs could not be reached by any means (which has certainly not been established), Counsel had procedural options by which to request an extension of the time period set forth in Rule 4(a)(1). Whatever good cause may mean, it does not stand to sanction irresponsible lawyering, bad faith, or a lack of diligence. Accordingly, Plaintiffs' Petition must be denied.

An appropriate order follows.

**AND NOW,** this 20th day of November, 2006, upon consideration of Plaintiffs' Petition to File Appeal to Third Circuit *Nunc Pro Tunc* (Document No. 26), **IT IS HEREBY ORDERED** that the Petition is **DENIED.**